OPINION OF THE COURT
Chief Judge Wachtler.
Eleven years ago, the defendant Erick Jackson was convicted of six counts of felony murder and one count of second degree arson in connection with a fire at a Waldbaum’s supermarket in Brooklyn that tragically claimed the lives of six New York City firefighters. Three years after his direct appeal was exhausted, defendant brought a motion to vacate his conviction pursuant to CPL 440.10 based on the People’s failure to supply him with a memorandum that contained the statement of a prosecution witness. The defendant claims that this was Rosario material and, therefore, the People should have turned it over to defendant during the trial (see, People v Rosario, 9 NY2d 286, cert denied 368 US 866).
On this appeal, we revisit the cases that grew out of our decision in Rosario, cases in which we stated and refined a per se error rule that called for reversal whenever the prosecution completely failed to turn over Rosario material. In People v *641 Consolazio (40 NY2d 446, 454), we first held that harmless error analysis was inappropriate when a defendant challenged the prosecution’s failure to turn over Rosario material. Since Consolazio, we have articulated the policy reasons for adopting a per se error rule for Rosario violations and have repeatedly reaffirmed our commitment to that rule (see, e.g., People v Jones, 70 NY2d 547; People v Ranghelle, 69 NY2d 56; People v Perez, 65 NY2d 154).
In each of these cases, however, the defendant’s Rosario claim was the subject of a direct appeal from the judgment of conviction. Even People v Novoa (70 NY2d 490), in which the defendant’s Rosario claim was the subject of both direct appeal and a CPL 440.10 motion, was treated as a direct appeal for procedural purposes. We were not asked to consider at that time whether the per se error rule should be extended to apply to postconviction motions to vacate under CPL 440.10.
Thus, the question before the Court today is indeed a novel one. We must decide whether the per se error rule applies to Rosario claims raised on a CPL 440.10 motion after a defendant’s direct appeal has been completed. The only two subdivisions of CPL 440.10 that arguably touch upon Rosario violations both require a defendant to show that he was prejudiced by the conduct that is the subject of the motion.
In originally adopting the per se error rule, we balanced the rights of the defendant against the rights of society and arrived at a policy designed to foster the "right sense of justice” that had led this Court to fashion and impose the stringent discovery requirements that are at the heart of the Rosario decision. Here, however, the Legislature has already spoken and required defendants filing CPL 440.10 motions to make a showing of prejudice. Given the policy concerns underlying this prejudice requirement, including society’s interest in the finality of judgments, we conclude that prejudice cannot be assumed and must be articulated. Thus, we hold that a defendant who has exhausted direct appeal and who seeks to raise a Rosario claim by way of a CPL 440.10 motion will be required to make an actual showing that prejudice resulted from the prosecution’s failure to turn over Rosario material. Accordingly, we now reverse and remit.
L_
A detailed account of the events leading up to the defen *642 dant’s conviction for felony murder and arson is contained in this Court’s opinion disposing of defendant’s direct appeal from his judgment of conviction (65 NY2d 265). Since 1985, the year his conviction was affirmed, defendant has twice moved to have that conviction vacated pursuant to CPL 440.10. The first such motion, based on ineffective assistance of trial and appellate counsel, was denied by the trial court in 1986.
The motion at issue on this appeal was brought in July of 1988. The defendant again claimed on this motion that the representation provided by his trial attorney had been ineffective, and additionally claimed that he had been deprived of Brady material (Brady v Maryland, 373 US 83). The trial court notified the People and defense counsel that it would also treat the defendant’s motion as raising a claim for relief under Rosario. During the hearings on the motion, the People conceded that the defendant had not been given a memorandum that contained a synopsis of an interview with a fire marshal who later testified for the prosecution at trial. The People also acknowledged that the memorandum was not the duplicative equivalent of material that had been turned over to the defendant (see, e.g., People v Consolazio, supra, at 454). In a memorandum decision dated November 7, 1988, the Trial Judge granted defendant’s motion to vacate his judgment of conviction. Citing this Court’s decision in Novoa (supra), the Trial Judge rejected the People’s argument that the defendant needed to show that he had been prejudiced by the Rosario violation. The Appellate Division affirmed the trial court’s order, relying on language from Novoa, Jones, and Ranghelle (supra) for its conclusion that harmless error analysis was not appropriate with respect to a Rosario violation. A Judge of this Court granted the People’s motion for leave to appeal.
IL
Prior to our holding in Rosario, a defendant was permitted to inspect only those statements of prosecution witnesses that contained matter inconsistent with the testimony given by the witness on the stand (see, e.g., People v Walsh, 262 NY 140, 149). In Rosario, we concluded that "a right sense of justice entitles the defense to examine a witness’ prior statement, whether or not it varies from his testimony on the stand” (id., at 289). "As long as the statement relates to the subject matter of the witness’ testimony and contains nothing that *643 must be kept confidential, defense counsel should be allowed to determine for themselves the use to be made of it on cross-examination” (id., at 289). The Court reasoned that "single-minded counsel for the accused” was better able than the presiding Judge to assess the usefulness of witness statements for impeachment purposes (id., at 290). We acknowledged at that time that our decision "turn[ed] largely on policy considerations” (id., at 289). Thus, our characterization of this decision as policy based is not, as the dissent would suggest, a post hoc departure from reason and logic, but a reiteration of the rationale for the decision, in the very language used by the Rosario majority.
The per se error rule is not found in Rosario, however. In that case, the Court applied a harmless error analysis, looking to whether "there was a rational possibility that the jury would have reached a different verdict if the defense had been allowed the use of the witness’ prior statements” (id., at 291). The Court concluded that the violation at issue in Rosario was indeed harmless and affirmed the defendant’s judgment of conviction.
As noted above, this Court first applied the per se error rule in People v Consolazio (40 NY2d, at 454, supra). In People v Perez (supra), we explained our adherence to the per se error rule by looking to the policy considerations that had led to the Rosario decision. We noted that "[t]he essence of the Rosario requirement, that the prosecutor supply all of a witness’ statement or statements relating to his testimony, is that a judge’s impartial determination as to what portions may be useful to the defense, is no substitute for the single-minded devotion of counsel for the accused. Appellate judges have no advantage over trial judges in making such a determination” (People v Perez, supra, at 160).
We again applied the per se error rule in People v Ranghelle (supra) in which we refused to recognize a good-faith exception that would excuse the prosecution’s failure to turn over Rosario material (People v Ranghelle, supra, at 63). In People v Jones (supra), the People argued that Ranghelle was an illogical and aberrational decision that would wreak havoc on the criminal justice system of this State. In the face of this direct challenge to the line of per se error cases culminating in Ranghelle, we refused to cut back on our commitment to the per se error rule for Rosario claims. In Jones a majority of the Court stated that "[i]t is defense counsel alone who has the *644 responsibility for making the strategic judgments and doing the careful preparation required for planning and executing an effective cross-examination of the People’s witnesses and deciding whether and how to use the statements. When, as a result of the prosecutor’s violation of the Rosario rule, defense counsel has been deprived of material of which he or she is unaware or cannot otherwise obtain, there is no way, short of speculation, of determining how it might have been used or how its denial to counsel might have damaged defendant’s case” (People v Jones, supra, at 552).
At the same time as we stated the per se error rule and imposed stringent penalties on prosecutors who failed to comply with their Rosario obligations, we recognized certain commonsense limitations on the scope of those obligations. Thus, in People v Poole (48 NY2d 144), we refused to hold that the defendant had an unfettered right to inspect all of the documents contained in the prosecutor’s files in order to determine for himself whether any of the material would be useful. We stated that to allow unrestricted access to prosecution files would "extend the letter and spirit of Rosario and its progeny beyond its legitimate purpose — to afford the defendant a fair opportunity to use a witness’ prior relevant statements for impeachment purposes” (People v Poole, supra, at 149-150). And in Consolazio (supra), even as we applied the per se error rule for the first time, we held that it was not error for the prosecution to fail to turn over worksheets that were the "duplicative equivalents” of documents that were already turned over as Rosario material (People v Consolazio, supra, at 454).
Rosario is not based on the State or Federal Constitution. It is, in essence, a discovery rule, based on a deeply held belief that simple fairness requires the defendant to be supplied with prosecution reports and statements that could conceivably aid in the defense’s cross-examination of prosecution witnesses. As Rosario became more entrenched in the criminal jurisprudence of this State, we adopted a per se error rule that afforded the defendant’s cross-examination rights even greater protection and attached significant penalties to the failure to turn over Rosario material. Even if the failure was inadvertent and even if the prosecutor argued that the withheld material was trivial, the defendant was to receive a new trial.
Applying a per se error rule in the Rosario cases that *645 reached this Court on direct appeal was thus a policy decision, grounded in our recognition that to permit harmless error analysis in Rosario cases was to speculate as to the uses to which Rosario material could have been put, something that was contrary to the spirit of fairness that animated the Rosario decision. We are now at another crucial point in the development of our Rosario case law. In this case, the normal appellate process was exhausted 6V2 years ago. The crime occurred 13 years ago. Because there is no time limit on the filing of CPL 440.10 motions, this set of facts is by no means aberrational. CPL 440.10 motions could conceivably be filed decades after direct appeal has been completed. Thus, we now confront new policy considerations and must again balance society’s interests against those of the defendant.
This time, however, we are not guided solely by the weight of our own precedent. The defendant is resting his challenge upon a statute, and we therefore direct our attention to the statutory language that maps out the scope of the remedy he seeks. CPL 440.10 does not contain a separate prong that is clearly applicable to Rosario cases. There are two that might arguably apply: the newly discovered evidence prong (CPL 440.10 [1] [g]) and the "[i]mproper and prejudicial conduct” prong (CPL 440.10 [1] [f]). Both of these paragraphs require some showing of prejudice before a defendant will be entitled to have a judgment of conviction vacated: CPL 440.10 (1) (f) by its very terms requires that the conduct at issue on the motion be "[i]mproper and prejudicial” and that "it * * * would have required a reversal of the judgment upon an appeal therefrom,” while CPL 440.10 (1) (g) requires that the newly discovered evidence be "of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant.”
We believe that Rosario claims are most appropriately raised under CPL 440.10 (1) (f), the "[i]mproper and prejudicial conduct” paragraph (cf., People v Howard, 127 AD2d 109, 118). We reach this conclusion for several reasons. First, it has been held that evidence that tends to impeach a trial witness’ testimony is not the sort of "newly discovered evidence” that would entitle a defendant to a new trial (see, e.g., People v Powell, 96 AD2d 610; People v Wood, 94 AD2d 849, 850). Yet the very purpose of the Rosario decision is to give defendants an opportunity to use relevant witness statements for impeachment purposes. Thus, in that Rosario material is accorded protection precisely because it can be used to impeach *646 trial witnesses, prior precedent suggests that such material could never constitute the sort of newly discovered evidence that would entitle the defendant to a new trial.
Second, the Rosario decision is not grounded in the same policy concerns as the newly discovered evidence paragraph of CPL 440.10 (1), which is concerned primarily with the exculpatory value of the newly discovered material. Rosario material is treated differently not because it is exculpatory, but because basic fairness dictates that a defendant be given the opportunity to evaluate pretrial statements of prosecution witnesses for their impeachment value. Although fairness to the defendant obviously underlies both the Rosario decision and CPL 440.10 (1) (g), there are significant differences in the values sought to be advanced by the two.
Consequently, we believe that these claims are better raised under CPL 440.10 (1) (f), the paragraph applicable to improper and prejudicial conduct. The Rosario decision, presently codified at CPL 240.45 (1) (a), imposes a definite duty upon the prosecution to turn over pretrial statements of prosecution witnesses that relate to the subject matter of the witnesses’ testimony. Failure to comply with this duty, however inadvertent, violates both statutory and common-law mandates and is consequently improper.
To prevail under CPL 440.10 (1) (f), however, a defendant must do more than demonstrate that the conduct at issue was improper. The statute by its very terms affords a remedy only if the defendant’s trial was affected by conduct that was both improper and prejudicial. The statute compels an inquiry into the presence or absence of prejudice. This requirement is directly related to society’s interest in the finality of judgments. There is no time limit on the filing of CPL 440.10 motions. As time passes, evidence is misplaced, witnesses disappear and once vivid memories of a crime begin to fade into uncertainty. All of this has a profound effect upon the People’s ability to retry a defendant years after direct appeal has been exhausted. At common law, defendants seeking a writ of error coram nobis were required to demonstrate prejudice, and this requirement was based in part upon society’s interest in the finality of judgments (see generally, Fuld, The Writ of Error Coram Nobis, NYLJ, June 5, 1947, at 2212, col 1; People v Howard, 12 NY2d 65; see also, People v Wilkins, 28 NY2d 53; 18 Am Jur 2d, Coram Nobis, § 13, at 633). The Legislature carried the prejudice requirement forward when *647 the common-law remedy was codified in CPL 440.10. Once the Legislature has established a remedy, the terms of the applicable statute control the scope of that remedy (see, e.g., People v Corso, 40 NY2d 578). Presumably, the Legislature, in balancing the competing policy concerns, including its own right sense of justice, recognized the need for defendants to receive their punishment, unless they were able to show that they were entitled to the statutory remedy and that they had been prejudiced by the trial error that was at issue in the motion to vacate.
It is for us, however, to look at the statutory requirement of prejudice and to determine the reading that this language should be given. In fulfilling our judicial function, we cannot by the force of our own precedent render the prejudice requirement a nullity. Nor can we ignore the underlying legislative purpose of that requirement.
In including a prejudice requirement in CPL 440.10 (1) (f), the Legislature was concerned about society’s interest in finality of judgments. We too recognize this interest is formidable. As we have already noted, the language of the statute contains no limitation on the time period during which such motions can be filed. Defendants can thus avail themselves of the statutory remedy many years after the normal appellate process has been completed. In that the passage of time greatly affects the People’s ability to retry a defendant, we think it would be imprudent to read the prejudice requirement out of the statute by taking the per se error rule and applying it in CPL 440.10 context. To assume prejudice without requiring the defendant to demonstrate actual prejudice would eviscerate the language of CPL 440.10 (1) (f) and the concern for finality that underlies this language.
We therefore conclude that Judges conducting CPL 440.10 hearings should not assume the existence of prejudice simply because the defendant has stated a Rosario claim. In fulfilling our duty as common-law Judges to interpret statutory language, we believe that a defendant raising a Rosario claim by way of a CPL 440.10 motion must make a showing of prejudice. We will not step in and cut off that inquiry. Neither our precedent nor our concern for fairness to the defendant requires that result.
We take issue with the dissent’s statement that our decision today "cannot be justified by statutory language, precedent or a priori logic” (dissenting opn, at 654-655). In assigning mean *648 ing to the term "prejudice” in the context of CPL 440.10 (1) (f) motions, we are guided by the legislative purpose behind the prejudice requirement and by our recognition that postconviction motions to vacate and direct appeal are procedurally and conceptually quite different. We refuse to concede that a series of cases, generated in a wholly distinct procedural posture, restrain our ability to think critically about the issues presented on this appeal. We are well aware that adherence to precedent is at the heart of common-law decision-making. However, we do not accept the dissent’s suggestion that the balance struck in the per se error cases controls the result in this case, in which statutory language, legislative history, and societal interests in finality — factors never before considered in the Rosario context — all dictate the opposite result.
This holding does not represent a de facto elimination of the per se error rule, as the dissent contends. In the 31 years since Rosario was decided, this case is the first before this Court to raise a Rosario violation in the context of a CPL 440.10 motion brought after direct appeal was completed. This suggests to us that applying the per se error rule up until the completion of the appellate process and applying the rule we articulate today thereafter will as a practical matter not affect the vast majority of defendants who raise Rosario claims.
In Rosario, Consolazio, Ranghelle and the other per se error cases, we struck a balance. We were not impelled by constitutional mandates to make the choices that we did. Rather, we were motivated by a desire to treat defendants fairly. Unlike the dissent, however, we believe that our decision today, striking a different balance, is indeed grounded in reason and logic. We have attempted to bring both to bear in our articulation of a rule that is fair to the defendant but that takes into account the nature of the collateral remedy and the interests implicated by that remedy. The existence of the Judge-made per se error rule does not permit us to subvert the language of CPL 440.10 (1) (f) with impunity. Ultimately, it is our responsibility as Judges to harmonize the common-law rule and the statutory remedy as far as practicable. This is what we seek to do today.
In light of our holding in this case, we now spell out the degree of prejudice that a defendant with a Rosario claim must show in order to prevail on a motion to vacate brought under CPL 440.10 (1) (f). Having reviewed Rosario and the per se error cases and looked for guidance to People v Vilardi (76 *649 NY2d 67), we hold that a defendant who was deprived of Rosario material and who consequently seeks to vacate a conviction under CPL 440.10 (1) (f) must demonstrate a reasonable possibility that the failure to disclose the Rosario material contributed to the verdict.
We reach this conclusion for several reasons. First, it is the standard used by the majority in Rosario itself (id., at 291), and for that reason is certainly consistent with the policy considerations that first led this Court to implement the Rosario rule. Second, it is the standard that is currently in use for Brady material, where the prosecutor was placed on notice by a specific discovery request that the defendant considered the material important to the defense (see, People v Vilardi, supra, at 77). Thus, while a per se error rule will continue to apply to Rosario but not Brady claims on direct appeal, there will now be a certain congruence in the treatment of Rosario and Brady claims raised by way of CPL 440.10 motions after direct appeal has been exhausted. Finally, we conclude that this is the most equitable standard for ascertaining whether prejudice resulted from Rosario violations. Any other standard would create too great a disparity between the treatment of these claims on direct appeal, where a per se error rule continues to apply, and on postconviction motion, where, as we hold today, CPL 440.10 requires a finding that the defendant was prejudiced by the failure to turn over Rosario material.
In conclusion, we would like to emphasize that the per se error rule is still the law in this State when a Rosario claim is the subject of a direct appeal from a judgment of conviction. We continue to believe that defense counsel is in a far better position than the Trial Judge to determine the impeachment value of Rosario material. In addition, our holding in People v Novoa (70 NY2d 490, supra) establishes that where a Rosario claim is the subject of both a direct appeal and a postconviction motion brought under CPL 440.10, the per se error rule will also apply. Where direct appeal has been exhausted, however, and the defendant seeks to vacate a judgment solely by way of a CPL 440.10 motion, the terms of that statute control. The interest in finality implicated by CPL 440.10 motions, has led us to conclude that defendants must be prepared to show that actual, ascertainable prejudice resulted from the Rosario violation.
The dissent terms the procedural distinctions we draw today *650 "arbitrary” (dissenting opn, at 656). We, by contrast, view them as part of an effort to balance the rights of the defendant against the interests of society. The dissent is correct to point out that we are greatly concerned about the possibility that significant periods of time may elapse between the affirmance of a defendant’s conviction on appeal and the filing of a CPL 440.10 motion. But this does not in any way diminish our commitment to treating defendants fairly. Thus, our decision to treat CPL 440.10 motions differently depending upon whether the defendant has exhausted direct review is not a product of whim or caprice. Rather, it is a reflection of our ongoing effort to accommodate both society’s interest in finality and the defendant’s right to examine impeachment evidence. We have endeavored to fashion a rule that addressed our concerns regarding the infinite duration of the CPL 440.10 remedy without undermining the fairness concerns that are at the core of Rosario. Contrary to the dissent, we believe that our holding today achieves that result.
Because both the trial court and the Appellate Division determined that the per se error rule applied to the defendant’s Rosario claim, he was not required to show that he had been prejudiced by the Rosario violation. Therefore, defendant is entitled to a CPL 440.10 hearing in order to permit defendant to establish that there was a reasonable possibility that the failure to turn over Rosario material contributed to the verdict against him. In addition, he should be permitted to address those claims that were not reached below as a result of the disposition of his Rosario claim.
Accordingly, the order of the Appellate Division should be reversed, and the case remitted to Supreme Court, Kings County, for further proceedings in accordance with the opinion.