*860 OPINION OF THE COURT
Ronald J. Aiello, J.
Defendant moves, pursuant to CPL 440.10 (1) (f) and (h) for an order vacating the judgment rendered by this court on August 31, 1988 and for a new trial and a new Huntley/Mapp hearing. Defendant argues that this order should be granted on the ground that the People failed to disclose two police reports in violation of People v Rosario (9 NY2d 286, cert denied 368 US 866 [1961]). By decision and order dated August 8, 1991, this court held defendant’s motion in abeyance pending the decision of the Court of Appeals in People v Jackson (78 NY2d 638). The Court of Appeals decided Jackson on December 19, 1991 and this court subsequently granted the parties permission to submit additional papers. A supplemental memorandum of law dated January 15, 1991 [sic] was submitted on behalf of defendant Robles. A supplemental memorandum of law in opposition to motion to vacate judgment dated January 23, 1992 was submitted by the People. This court’s decision and order dated August 8, 1991 summarizes the facts relevant to the issue of whether the failure to turn over the police reports was a Rosario violation and the prior procedural history of this case. Accordingly, it need not be repeated here.
In view of the opinion of the Court of Appeals in People v Jackson (supra), and the language of CPL 440.10 (1) (f), this court holds that defendant is required to show that he was prejudiced by the failure of the People to disclose the two police reports. Because the failure to disclose the reports did not prejudice the defendant, defendant’s motion is denied.
Defendant argues that where a CPL 440.10 motion is brought prior to the exhaustion of the direct appeal, People v Novoa (70 NY2d 490) governs and the existence of a Rosario violation requires that the defendant’s conviction must be vacated under the court’s per se error rule. Since this motion is in the same procedural posture as the CPL 440.10 motion in Novoa, defendant argues that this conviction must be vacated under the per se error standard without consideration of possible prejudice. The court rejects this argument as being inconsistent with the holding of the Jackson decision (supra) when read as a whole, along with CPL 440.10 (1) (f).
In Jackson (supra), the Court of Appeals held that, where a defendant has exhausted his direct appeal, and is raising a Rosario claim in a motion to vacate judgment pursuant to *861 CPL 440.10 (1) (f), it is the burden of the defendant to demonstrate that there is a reasonable possibility that the failure to disclose the Rosario material contributed to the verdict. This holding was based on analysis of the language contained in CPL 440.10 (1) (f), which provides that a judgment may be vacated upon the ground that: "Improper and prejudicial conduct not appearing in the record occurred during a trial resulting in the judgment which conduct, if it has appeared in the record, would have required a reversal of the judgment upon an appeal therefrom[.]” (Emphasis supplied.)
It appears to this court that a fair reading of the Jackson case (supra) and the language of CPL 440.10 does not rationally permit treating a Rosario claim, raised in a motion to vacate judgment before the exhaustion of direct appeal any differently from a Rosario claim raised in a motion to vacate judgment after the exhaustion of direct appeal. The logical extension of this premise is that where, as in the defendant’s case, a trial court evaluating a motion to vacate judgment, is considering a Rosario claim made pursuant to CPL 440.10 (1) (f), the trial court must determine whether the defendant was actually prejudiced by the alleged Rosario violation. Defendant’s assertion that the Jackson opinion requires this court to view a Rosario violation in his case as a per se reversible error is not tenable.
The over-all analysis of CPL 440.10 (1) (f) set forth in Jackson (supra) provides no logical reason for a motion court to treat Rosario claims raised in preappeal CPL 440.10 motions any differently from those raised in postappeal CPL 440.10 motions. Simply put, no court can properly broaden the scope of the remedy of CPL 440.10 beyond what the Legislature intended and there is no rationale for concluding that the Legislature intended that the word "prejudicial” as used in CPL 440.10 (1) (f) should mean something different in the preappeal context and the postappeal context.
Defendant’s reliance on People v Novoa (70 NY2d 490, supra) is misplaced. As the Jackson decision clearly recognized, Novoa "was treated as a direct appeal for procedural purposes”. (People v Jackson, 78 NY2d 638, 641, supra.) These words are a critical part of the Jackson opinion and should not be lightly glossed over.
Accordingly, it is the decision of this court that defendant must show that he was "prejudiced by the trial error that was at issue in the motion to vacate.” (People v Jackson, supra, at 647.)
*862 Analysis next proceeds to the issue of whether or not the defendant has demonstrated prejudice. The Court of Appeals has declined to adopt the Federal constitutional standard for determining whether prosecutorial failure to disclose specifically requested exculpatory material (Brady material) should result in vacating a conviction on a postjudgment motion. Under the Federal rubric (known as the Bagley standard) the undisclosed evidence is deemed material only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different (i.e., a probability sufficient to undermine confidence in the outcome). (United States v Bagley, 473 US 667.) New York will utilize a less rigorous test if the failure relates to an item that was specifically requested. In such case, the standard will be whether there is a reasonable possibility that the failure to disclose contributed to the verdict. (People v Vilardi, 76 NY2d 67; Preiser, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 440.10, 1992 Pocket Part, at 123-124.)
The nature of the omitted evidence is detailed in this court’s memorandum decision of August 8, 1991.
Defendant has made no showing or attempt to show that if the two police reports were disclosed, there is a reasonable possibility that the failure of the People to disclose the reports contributed to the verdict. The hearing evidence conclusively supported this court’s denial of defendant’s motion to suppress statements made to the police and to an Assistant District Attorney, and this court’s denial of defendant’s motion to suppress physical evidence recovered from his apartment. The evidence at trial, which included defendant’s detailed confessions as to the murder to his cousin and law enforcement officials, testimony from Raymond Nieves, who was a second cousin to defendant, linking defendant to the murder weapon (a sawed-off .22 caliber rifle), as well as physical evidence showing that the defendant had access, and had in fact gained entry to the basement where the body of young Jessica Febus was found, overwhelmingly demonstrated defendant’s culpability of the murder. It is crystal clear to this court, that the two undisclosed police reports did not contain any statements undermining the overwhelming evidence of defendant’s guilt and thus there is no reasonable possibility that timely disclosure of those statements would have affected the verdict. (People v Jackson, 78 NY2d 638, 649, supra; see also, People v *863 Young, 172 AD2d 790, 791 [2d Dept 1991] [there are " 'common-sense* ” limits attendant to the Rosario rule].)*
For the reasons above stated, the defendant’s motion is denied in all respects.

 This court observes that the Jackson decision (supra), which split the Court of Appeals, four to three, will no doubt, not only engender many more court opinions on this subject, but will be a future source of spirited opinions from the pens of prominent members of the Bar who themselves, have strong opinions on both the majority and minority opinions. (See, Kunstler, Goodbye to "Rosario”, NYLJ, Jan. 10, 1992, at 2, col 3.) Kunstler opines that the Jackson decision comes at a time when "prosecutorial misconduct” has reached "epidemic proportions” and that the Court of Appeals, "once the bastion of civil rights and liberties, has now succumbed to the trend, epitomized by the Supreme Court’s anti-libertarian majority, to insure that criminal defendants lose as much of their ability to defend themselves adequately as possible.” (Id., at 2, col 4.)
For an opposite point of view see Cohen and Gore, An Appropriate Measure of Prejudice (NYLJ, Jan. 21, 1992, at 2, col 3). Mr. Cohen and Mr. Gore are both prosecutors with the Kings County District Attorney’s office Appeals Bureau. Their article was written in response to Mr. Kunstler’s criticism of the Jackson opinion (supra). Mr. Cohen and Mr. Gore represented the People throughout the entire Jackson litigation.