OPINION OF THE COURT
Sheldon Greenberg, J.
In the early morning hours of February 17, 1989, four armed men entered a crowded social club located on Clarkson Avenue in Brooklyn and began shooting. By the time they fled the premises, Paula Todd and Rishon Savory lay dead and three other patrons had been wounded.
*495 Wilner Louis, Shawn Cyrus and Stanley Townsend, identified as three of the four perpetrators, were indicted for a variety of crimes committed during the incident and each went to trial separately. Stanley Townsend, tried after Wilner Louis, was convicted by a jury on October 19, 1991 of two counte of murder in the second degree, four counts of attempted murder in the second degree, attempted murder in the first degree, four counts of criminal possession of a weapon in the second degree, and reckless endangerment in the first degree. On November 18, 1991 sentences were imposed upon him which he is serving at present.
Months later, during the trial of Shawn Cyrus, the prosecutor discovered that two of the witnesses who had testified against Stanley Townsend at his earlier trial, Police Officers Ronald Murgo and Richard Williams, had been interviewed on the morning of the incident by members of the New York Police Department Field Internal Affairs Unit. This investigation concerned matters which were later the subject of the officers’ trial testimony. The questioning was recorded on audiotape and became the focus of a four-page report examining the discharge of police weapons while chasing suspects immediately after the shootings.
Clearly the recordings and report were Rosario material. It is equally clear that the District Attorney’s office did not become aware of their existence until after Stanley Townsend had been sentenced, and that nothing that had been turned over before the end of this trial could be considered the duplicative equivalent of the undisclosed material.
Although Stanley Townsend has filed a notice of appeal with the Appellate Division, Second Department, he has not yet perfected that appeal. He now moves this court for an order, pursuant to CPL 440.10, vacating the judgment against him. He argues that: (a) the complete failure to deliver Rosario material constitutes error per se requiring vacatur of the conviction; (b) inadvertence on behalf of the prosecutor and the absence of bad faith are irrelevant; and (c) harmless error analysis by the trial court is inappropriate (People v Jones, 70 NY2d 547; People v Novoa, 70 NY2d 490; People v Ranghelle, 69 NY2d 56).
The prosecution recognizes its failure to give over the Rosario material during trial and does not claim to have negated the violation with duplicative equivalents. They also recognize the existence of a per se error rule with respect to *496 Rosario violations. However, they claim that the per se error rule only exists in an appellate court on direct appeal. The District Attorney takes the position that where a trial court rules on a CPL 440.10 motion it is bound by law to inquire into the effect that any violation might have on the verdict and to determine whether there exists a reasonable possibility that the failure to disclose the material contributed to such verdict. In addition to reliance on People v Robles (153 Misc 2d 859), the People cite People v Jackson (78 NY2d 638) as holding that whether the defendant’s CPL 440.10 motion is made before or after the exhausting of direct appeals, a trial court must first find prejudice to the defendant has arisen as a result of a Rosario violation before it may vacate a conviction.
"In fulfilling our judicial function, we cannot by the force of our own precedent render the prejudice requirement a nullity * * *
"In that the passage of time greatly affects the People’s ability to retry a defendant, we think it would be imprudent to read the prejudice requirement out of the statute by taking the per se error rule and applying it in [the] CPL 440.10 context. To assume prejudice without requiring the defendant to demonstrate actual prejudice would eviscerate the language of CPL 440.10 (1) (f) and the concern for finality that underlies this language.
"We therefore conclude that Judges conducting CPL 440.10 hearings should not assume the existence of prejudice simply because the defendant has stated a Rosario claim. In fulfilling our duty as common-law Judges to interpret statutory language, we believe that a defendant raising a Rosario claim by way of a CPL 440.10 motion must make a showing of prejudice. We will not step in and cut off that inquiry. Neither our precedent nor our concern for fairness to the defendant requires that result.” (People v Jackson, supra, at 647 [emphasis added by the People].)
Claiming that the Jackson case (supra) supports the opposite view, the defense calls the court’s attention to the following language: "In conclusion, we would like to emphasize that the per se error rule is still the law in this State when a Rosario claim is the subject of a direct appeal from a judgment of conviction. We continue to believe that defense counsel is in a far better position than the Trial Judge to determine the impeachment value of Rosario material. In addition, our holding in People v Novoa (70 NY2d 490, supra) establishes *497 that where a Rosario claim is the subject of both a direct appeal and a postconviction motion brought under CPL 440.10, the per se error rule will also apply. Where direct appeal has been exhausted, however, and the defendant seeks to vacate a judgment solely by way of a CPL 440.10 motion, the terms of that statute control. The interest in finality implicated by CPL 440.10 motions, has led us to conclude that defendants must be prepared to show that actual, ascertainable prejudice resulted from the Rosario violation.” (People v Jackson, supra, at 649.)
The Jackson decision (supra), in imposing upon trial courts the necessity of engaging in harmless error analysis when deciding motions to vacate judgment based on Rosario violations, must be interpreted in light of the facts presented therein. Jackson dealt with a motion made after all direct appeals had been exhausted and cannot be logically interpreted to impose that same harmless error standard where the motion is made prior to any appeal. To do so would bind the trial court to, in possibly finding harmless error, inevitably be reversed on appeal to a court bound to a per se error rule. Recognizing that such a result would cause the trial court to act without purpose, the Appellate Division, Second Department, in People v Cecora (186 AD2d 215), has ruled that where the defendant’s Rosario claim is the subject of both a direct appeal and a postconviction motion under CPL 440.10, the per se error rule applies (see, People v Jackson, 78 NY2d 638, 649; People v Novoa, 70 NY2d 490).
Should there still be any claim that the Court of Appeals decisions in this area are unclear, the recent People v Banch decision (80 NY2d 610) specifically reaffirmed the per se error rule, recognizing only three exceptions thereto: (1) Cases arising on collateral review pursuant to CPL 440.10, after exhaustion of a defendant’s direct appeal; (2) Cases where the Rosario material cannot be produced because it has been lost or destroyed; and (3) Cases where the withheld material is the "duplicative equivalent” of material that was previously timely disclosed.
Since Stanley Townsend’s collateral attack on the instant conviction, pursuant to CPL 440.10, comes before he has exhausted his direct appeal, this court is prohibited from *498 examining whether or not the Rosario violation could possibly have influenced the outcome of the case.
Accordingly, this court, applying a per se error rule, finds error in the People’s failure to disclose Rosario material. The judgment of conviction heretofore entered is vacated and a new trial is ordered.