■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL ROBLES, Appellant. [600 NYS2d 77] —Appeal by the defendant (1) from a judgment of the Supreme Court, Kings County (Aiello, J.), rendered August 31, 1988, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence, and (2) by permission, from an order of the same court, dated March 10, 1992, which denied, without a hearing, his motion to vacate his judgment of conviction pursuant to CPL 440.10 *(People v Robles,* 153 Misc 2d 859).

Ordered that the matter is remitted to the Supreme Court, Kings County, to hear and report on whether the report prepared by Lieutenant Holmann at issue here contains the statements of a witness, Sergeant Shields, and the appeals are held in abeyance in the interim; the Supreme Court, Kings County, is to file its report with all convenient speed.

Following the entry of the defendant's judgment of conviction, two "unusual occurrence reports addenda" which had not been turned over to the defense were discovered. The first report, prepared by a Lieutenant Holmann (hereinafter referred to as the Holmann report), read as follows:

"On June 11, 1987 Sgt. Shields conferred with A.D.A. John Besunder relative to the arrest of Rafael Robles for the murder * * *. After discussing the case it was agreed that probable cause existed to arrest Robles in that:

"1. Robles made statements to a non-participant admitting the murder.

"2. Robles sold a .22 caliber rifle, sawed-off, to a non-participant, this weapon when recovered was identified by the Medical Examiner as the murder weapon (Matched contact wound to gun).

"3. Forensic evidence, obtained by a search warrant and a consent search, from Robles apartment is as follows:

"(a) dog hairs taken from the victims clothing are consistent with dog hairs taken from Robles apartment.

"(b) fibers taken from the victims clothing are consistent with fibers taken from the Robles apartment.

"(c) Ballistics test on the recovered weapon, although not conclusive, indicated that there were similar characteristics between the evidence recovered and the test evidence. Additionally there were indications that the weapon used had a sawed off barrel.

"4. Robles using either a hole in a wall or a hole in the floor had access to the basement.

"5. Property taken from the secured basement was found in the Robles apartment.

"6. Robles was present in the building at the time of the murder.

"Addtionally [sic] Mr. Besunder stated that Mr. Robles after being advised of his rights could give a statement if he wanted to. This question was raised in that Mr. Robles, during a previous interview, stated that before he would take a polygraph he would have to speak to an attorney. Subsequently Mr. Robles gave a full statement to the District Attorney, admitting that [he] murdered [the victim]".

The second document, prepared by Detective Missig (hereinafter referred to as the Missig report) stated: "On 5/30/87 at approximately 2045 hrs at [a specified address] the victim was found by P.O. during the course of a search of the basement at location incidental to missing person UF 61 #11433. Body discovered laying face up in the locked basement, covered with white powder. M.E. Dr. Luft pres[e]nt at the scene tentitiveley [sic] lists the cause of death as strangulation. One puncture wound in the throat and one in the left back, with

brusies *[sic]* to the interior neck. Panties of victim pulled down with the shorts pulled back up. Dr. Luft says that he sees no apparent bruises to the victims lower parts".

Based upon these two documents, the defendant moved, pursuant to CPL 440.10, to vacate the judgment of conviction, arguing that these documents constituted *Rosario* material *(People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866), and that the failure of the People to turn these documents over to the defense during the trial constituted *per se* error. The Supreme Court ordered the motion held in abeyance while the Court of Appeals decided the case of *People v Jackson* (78 NY2d 638), which addressed the proper standard of review to be applied to *Rosario* issues brought pursuant to CPL 440.10.

Subsequent to the Court of Appeals decision in *Jackson* the Supreme Court, by an order dated March 10, 1992, denied the defendant's motion without a hearing, holding that the *Jackson* decision required a prejudice standard to be applied here, and finding that the defendant had failed to demonstrate or attempt to demonstrate any prejudice from the People's failure to turn over the above documents. We find that the Supreme Court misinterpreted *Jackson* in applying a prejudice standard since the defendant's appeal from his conviction was still pending.

Three years after his direct appeal was exhausted, the defendant in *Jackson* moved to vacate his judgment of conviction pursuant to CPL 440.10, based on the People's failure to supply him with a memorandum that contained the statement of a prosecution witness. The Court of Appeals stated that "the question before the Court today is indeed a novel one. We must decide whether the *per se* error rule applies to *Rosario* claims raised on CPL 440.10 motions *after* a defendant's direct appeal has been completed" *(People v Jackson, supra,* at 641 [emphasis supplied]).

Although the Court of Appeals appeared to be articulating a prejudice standard for *Rosario* claims brought pursuant to CPL 440.10, the Court ultimately held that that standard does not apply until *after* the defendant had exhausted his direct appeal. In so holding, the Court harmonized society's interest in the finality of judgments, the rationale underlying prejudice standard, with the notion of fundamental fairness to the defendant, the policy consideration behind the *per se* rule. The Court found that society's interest in the finality of judgments does not attach until after the defendant has exhausted his direct appeal. This holding is reflected in several statements

made by the *Jackson* Court. For example, the *Jackson* Court stated: "This holding does not represent a de facto elimination of the *per se* error rule, as the dissent contends. In the 31 years since *Rosario* was decided, this case is the first before this Court to raise a *Rosario* violation in the context of a CPL 440.10 motion *brought after direct appeal was completed.* This suggests to us that *applying the per se error rule up until the completion of the appellate process and applying the rule we articulate today thereafter* will as a practical matter not affect the vast majority of defendants who raise *Rosario* claims" *(People v Jackson, supra,* at 648 [emphasis added]).

The Court also stated that *"our decision to treat CPL 440.10 motions differently depending upon whether the defendant has exhausted direct review* is not a product of whim or caprice. Rather it is reflection of our ongoing effort to accommodate both society's interest in finality and the defendant's right to examine impeachment evidence" *(People v Jackson, supra,* at 650 [emphasis added]).

The *Jackson* Court further stated that "a defendant *who has exhausted direct appeal* and who seeks to raise a *Rosario* claim by way of a CPL 440.10 motion will be required to make an actual showing that prejudice resulted from the prosecution's failure to turn over *Rosario* material" *(People v Jackson, supra,* at 641). "Where direct appeal has been exhausted * * * and the defendant seeks to vacate a judgment solely by way of a CPL 440.10 motion, the terms of that statute control" *(People v Jackson, supra,* at 648-649; *see also, People v Young,* 79 NY2d 365; *People v Cecora,* 186 AD2d 215).

The Court of Appeals reaffirmed its *Jackson* holding in *People v Banch* (80 NY2d 610, 616), stating: "In cases arising on collateral review pursuant to CPL 440.10, *after exhaustion of a defendant's direct appeal,* a new trial is required only if the defendant can demonstrate 'a reasonable possibility that the failure to disclose the *Rosario* material contributed to the verdict.' *(People v Jackson,* 78 NY2d 638, 649, *on remittal* NYLJ, June 16, 1992, at 37, col 3 [ordering new trial]). This exception is grounded in the public interest in the finality of judgments as expressed in CPL 440.10 (1) (f). That statute, under which such collateral claims arise, affords a remedy only upon showing of prejudice *(People v Jackson, supra,* at 646)" (emphasis supplied).

Thus, it is clear that since the defendant here had not exhausted his direct appeal, the motion court should have applied the *per se* error rule in deciding his motion pursuant to CPL article 440.

However, upon reviewing the documents in question, we find that the "Complaint Followup Information" report, prepared by Detective Missig and timely turned over to the defense, was the duplicative equivalent of the Missig report to the extent that the Missig report relates to Detective Missig's testimony *(see, People v Ranghelle,* 69 NY2d 56, 63; *People v Consolazio,* 40 NY2d 446, *cert denied* 433 US 914). The Holmann report, on the other hand, is not the duplicative equivalent of the "Complaint Followup Information" report prepared by Sergeant Shields in that the Holmann report contains additional information.

The defendant contends that the Holmann report contains the statements of Sergeant Shields. However, Lieutenant Holmann, who did not testify at trial, could have obtained the information contained in his report from Assistant District Attorney Besunder, or from a combination of the "Complaint Followup Information" report prepared by Shields and information given to him by Besunder. In either event, the Holmann report would not constitute *Rosario* material *(see, People v Williams,* 165 AD2d 839, 841, *affd on other grounds* 78 NY2d 1087; *People v Miller,* 183 AD2d 790). Therefore, a hearing is required to determine whether Sergeant Shields was the source of any or all of the information contained in the Holmann report. Thompson, J. P., Rosenblatt, Pizzuto and Santucci, JJ., concur.