Titone, J.
(dissenting). I cast my vote to reverse and order a *190 new trial, thereby affording defendant the benefit he would have had if his attorney had not inexplicably waived the per se Rosario remedy to which he was clearly entitled under this Court’s precedents (see, e.g., People v Jones, 70 NY2d 547).[1]
The majority’s decision to reject defendant’s present argument that he was denied the effective assistance of counsel rests on its assertion that counsel might have had some strategic reason for failing to seek the new trial to which his client was unquestionably entitled. However, given the advancement of the client’s penal interests as the appropriate yardstick, it is difficult to discern a valid "strategic” advantage that this defendant, who had already been convicted of four counts of first degree sodomy, would have enjoyed by forgoing the new trial that would surely have followed from a properly made CPL 330.30 motion to set aside the verdict. Moreover, even if a theoretical "strategic” benefit for waiving defendant’s rights at the postverdict, prejudgment stage could be articulated, there could be no conceivable "strategic” reason for a defense attorney to volunteer for the record his own opinion that the prosecution’s Rosario violation had not led to any palpable prejudice. In opting to speak out rather than simply refraining from moving to set aside the verdict under CPL 330.30, defendant’s trial counsel affirmatively foreclosed the possibility of obtaining relief at some future point (see, People v Jackson, 78 NY2d 638, supra). Whatever justification may have existed in counsel’s mind for waiving an indisputably meritorious Rosario claim at that point in the proceedings, no similar justification could exist for counsel’s entirely separate choice to make observations that could only redound *191 to his client’s detriment (see, People v Bell, 48 NY2d 933; cf., People v Baldi, 54 NY2d 137).
The majority speculates about the existence of "[a]ny number of * * * professional strategic reasons or personal considerations affecting defendant’s fair trial interests” (majority opn, at 188). The Court refers to "advocacy for amelioration of sentence” as a "plausible strategy,” (majority opn, at 188) but does not explain how forgoing a legitimate motion to set aside the verdict for Rosario error could possibly advance that goal. The only other specific "strategic” consideration that is offered is that counsel "could have reasonably considered that his client’s interest would best be served by no further delay in the resolution of the case” (majority opn, at 188). In other words, the Court is now prepared to accept as "reasonable” representation, a decision by defense counsel to handle the case in such a way as to assure his or her client swift and certain punishment. Manifestly, if that rationale can be invoked to explain an otherwise inexplicable act by defense counsel, there would be little professional misconduct left that could ever be considered "ineffective assistance.”
Although we may have gone a long way in the direction of tolerating apparent professional blunders in the name of "trial strategy,” even that doctrine must have some limits. And, those limits, to the extent they exist, must be measured by reference to our basic assumptions about an attorney’s role in an adversary system. These assumptions include the fundamental supposition that a criminal defense attorney will do whatever is necessary and appropriate — within the law’s confines — to help the client to avoid an unfavorable adjudication or to escape punishment (see, Code of Professional Responsibility, Canon 7, DR 7-101; EC 7-1). While there may be anomalous individual situations in which a client prefers prompt punishment for some personal reason, those situations are rare and atypical. They certainly cannot be used as a fair basis for presuming that a particular attorney’s wholly self-defeating acts were the product of a deliberate strategic choice.
If the rule requiring the "effective assistance” of counsel at trial is to have any meaning at all, it must be premised on the notion that, in most cases, the attorney’s aim is to defeat the People’s charges or at least to minimize the client’s exposure to incarceration. Any action — or inaction — that could conceivably advance those goals can arguably be deemed "trial strat *192 egy.” Delivering up one’s client for incarceration sooner rather than later — with no concrete advantage discernible— obviously does not fall within that category.
Significantly, even the Appellate Division did not attempt to invoke the "trial strategy” analysis the majority has used in order to rationalize its decision to affirm. Instead, the Appellate Division relied on its own sense that defendant should not be afforded a new trial when, according to his counsel’s "candid” statement, defendant had no "substantive right to be vindicated” (194 AD2d 439). Manifestly, that rationale is equally infirm, since it overlooks that, in view of the prosecution’s belated Rosario disclosure, defendant had a substantive right to a new trial without regard to any hindsight estimate of what value the undisclosed material might have had (see, People v Jones, supra).
In truth, there is no legally or logically cognizable basis in this case for concluding that defendant received the effective assistance of counsel to which he was entitled. While defense counsel may have otherwise conducted an unobjectionable defense, counsel’s unexplained error in waiving defendant’s winning Rosario claim and thereby depriving him of a second chance at acquittal was so egregious and unquestionably prejudicial as to constitute a denial of effective assistance in itself. Although an ineffective-assistance-of-counsel claim must be "weighed in context and as of the time of complete representation at the trial level” as the majority notes (majority opn, at 188), that does not — and, in fact, cannot — mean that a single error by counsel can never alone form the basis of a valid ineffective-assistance claim (see, Murray v Carrier, 477 US 478, 496 [even an isolated error can constitute ineffective assistance]).[2]
Here, defendant had nothing to lose and everything to gain by objecting to the prosecution’s Rosario violation and de *193 manding a new trial without regard to the actual prejudice that that violation had caused. Counsel’s failure to obtain that benefit for his client cannot be reconciled with his duty to provide informed and zealous representation. Accordingly, I dissent from the majority’s decision to affirm the judgment of conviction.
Chief Judge Kaye and Judges Simons, Smith and Levine concur with Judge Bellacosa; Judge Titone dissents and votes to reverse in a separate opinion in which Judge Ciparick concurs.
Order affirmed.

. The majority hints at some change in the law, noting that there is some question in its mind as to whether a new trial "was * * * procedurally and merit-wise available” (majority opn, at 187). Since there is no doubt that the failure to disclose Rosario material is per se reversible error when the disclosure occurs after the close of evidence (see, People v Jackson, 78 NY2d 638, 649; People v Jones, 70 NY2d 547; cf., People v Ranghelle, 69 NY2d 56), I can only assume that the majority’s reservation concerns the question whether a motion to set aside a verdict under CPL 330.30 (1) is a proper vehicle for asserting a Rosario claim discovered after announcement of verdict. I would note, however, that any conclusion by this Court that CPL 330.30 (1) is not available in these circumstances would represent a dramatic change in the law (see, e.g., People v Kanefsky, 50 NY2d 162; People v Wright, 197 AD2d 398; see also, People v Jackson, supra, at 658 [Titane, J., dissenting]). Thus, the possibility that some of the members of this Court might, in the future, arrive at such a conclusion has no bearing on whether defense counsel here acted competently "as of the time of * * * representation at the trial level” (majority opn, at 188).

. The majority notes that defense counsel sought no particular relief during trial based upon the undisclosed Rosario material. Inasmuch as this appeal concerns the effectiveness of trial counsel’s performance at trial, it is difficult to discern what legal significance can logically be ascribed to counsel's purported silence. In any event, for the sake of clarity, it must be noted that there were extensive discussions about the undisclosed Rosario material during trial. Further, the trial court itself made it clear that, in its view, a continued failure by the prosecutor to comply would lead to a reversal of any jury determination. The trial court’s comments on the subject, including its statement that it would "have [defense counsel] preserve his exceptions for the record with respect to th[e] memo book,” made further action by defense counsel unnecessary.