# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 103
The People &c.,
  Appellant,
   v.
Rudolph Kaval,
  Respondent.

Christopher J. Blira-Koessler, for appellant.
Simon Greenberg, for respondent.

MEMORANDUM:

The order of the Appellate Division should be reversed and the case remitted to the

Appellate Division for consideration of the facts and issues raised but not determined on

appeal to that Court.

Upon the appeal from defendant's judgment of conviction and original sentence as a persistent violent felony offender in 2013, the People conceded that defendant's prior incarceration dates did not provide sufficient tolling to qualify his 1987 conviction as a requisite predicate offense (*see* Penal Law §§ 70.08 [1] [a], 70.04 [1] [b]). While affirming the judgment of conviction, the Appellate Division vacated defendant's adjudication as a persistent violent felony offender and the sentence imposed thereon, and remitted the matter to Supreme Court "for resentencing in accordance" with its decision (*People v Kaval*, 154 AD3d 875, 875 [2d Dept 2017] [*Kaval I*]). The Court did not further direct the scope of resentencing.

On remittal, Supreme Court resentenced defendant as a persistent violent felony offender, relying on supplemental evidence of defendant's prior incarceration brought to the court's attention in connection with collateral motion practice. Defendant appealed, and the Appellate Division, with one Justice dissenting, vacated defendant's resentence and remitted for a second time. The Court declined to revisit its prior determination that defendant did not qualify as a persistent violent felony offender under the law of the case doctrine and directed Supreme Court to resentence defendant as a second violent felony offender (*People v Kaval*, 194 AD3d 746 [2d Dept 2021] [*Kaval II*]). The People now appeal by leave of the dissenting Justice.

Under the particular circumstances of this case, the Appellate Division should have affirmed defendant's resentencing as a persistent violent felony offender. At the time of resentencing, Supreme Court was on notice of the supplemental evidence of defendant's prior incarceration, which conclusively demonstrates that defendant is, in fact, a persistent

violent felony offender.  Further, the Appellate Division did not limit its remittal in *Kaval I* as it has in other cases (*see e.g.*, *People v Flores*, 185 AD3d 958, 959 [2d Dept 2020], *lv denied* 35 NY2d 1112 [2020]; *People v Fews*, 148 AD3d 1180, 1182 [2d Dept 2017], *lv denied* 29 NY3d 1079 [2017]; *People v Velazquez*, 58 AD3d 646, 646 [2d Dept 2009], *lv denied* 12 NY3d 860 [2009]).  On these facts, Supreme Court was not precluded from imposing the statutorily required sentence based on the evidence before it, particularly given that court's "inherent authority to correct illegal sentences" (*People v Williams*, 14 NY3d 198, 217 [2010]; *People v DeValle*, 94 NY2d 870, 871-872 [2000]; *see e.g. People v Simpson*, 173 AD3d 1617, 1621 [4th Dept 2019], *lv denied* 34 NY3d 954 [2019]), and the statutory sentencing procedures, which we have described as "mandatory [in] nature" (*People v Scarbrough*, 66 NY2d 673 [1985], *revg for reasons stated in dissenting op* 105 AD2d 1107, 1108-1109 [4th Dept 1984]).  While providing safeguards like notice and an opportunity to be heard, the procedures also generally require that pertinent "information available to the court or to the people" be presented and used to determine a defendant's sentence (CPL 400.15 [2]; Penal Law § 70.08 [2] [when a court determines "that a person is a persistent violent felony offender," it "must impose an indeterminate sentence" in compliance with the statute]).

Contrary to the dissent's suggestion, post-conviction motions based on actual innocence and CPL 440.20 and 440.40 motions to set aside sentences are subject to different statutory limitations and implicate different interests.  This is a direct appeal from a sentence which is yet to become final.  Although we certainly do not condone the People's unexplained lack of diligence in presenting the supplemental evidence at the original

sentencing hearing, on the record before us, that evidence demonstrates that Supreme Court

correctly resentenced defendant as a persistent violent felony offender.

WILSON, J. (dissenting):

This is an odd case, in which the parties have mistakenly attempted to apply the law of the case doctrine and also argue about whether the People, having failed to present available evidence at the initial sentencing, can concede error on appeal and obtain a free do-over.  Ordinarily, whether in a civil or criminal context, we do not allow parties a second chance at an apple that could readily have been picked the first time – especially when, as here, they had an obligation to pick it the first time (*see, e.g.*, CPLR 5015 [2]; CPL 440.10

- 1 -

[1] [g]). Judicial efficiency and the importance of finality undergirds that policy. It is also odd because, as the majority suggests, the Appellate Division could have stated the terms of its initial remittal more clearly, to require that Mr. Kaval be resentenced as a second violent offender, so that this is not a circumstance likely to arise again. Even as to Mr. Kaval it is odd, because on remittal the Appellate Division can adjust Mr. Kaval's sentence using its interest of justice power as it sees fit.

As the majority points out by referencing several cases decided by the Appellate Division, Second Department, the Appellate Division can expressly constrain a sentencing court on remittal as to the sentence to be imposed (majority opinion at 2-3). Likewise, the Appellate Division could expressly order a sentencing court on remittal to conduct a *de novo* sentencing on a new record. Here, the Appellate Division did neither, and subsequently interpreted its remittal order as constraining the sentencing court to sentence Mr. Kaval as a second violent felony offender, not a persistent violent felony offender. In this very unusual circumstance, the sole relevant question is: under what standard do we review the Appellate Division's interpretation of its own prior order?

Unfortunately, neither party has identified that question as an issue on appeal, so it remains open for us to resolve should it ever again arise. Instead, left with the way in which the parties have framed the case, absent a showing of good cause for the People's failure to present evidence readily available to them at Mr. Kaval's initial sentencing, I would hold that he must be sentenced as a second violent felony offender, not a persistent one. Had the shoe been on the other foot, and Mr. Kaval failed to present available evidence that might have led to a mitigation of his sentence, we would not let him reopen

his sentencing procedure to seek a more lenient sentence.[1]  Fundamental fairness, not to mention judicial efficiency, requires that we hold the People to at least that same standard.

I

While crossing the street in front of police officers, Mr. Kaval moved a gun from his pocket to his waistband.  A jury convicted him of criminal possession of a weapon in the second degree and two counts of criminal possession of a weapon in the third degree. The People informed Mr. Kaval and the court that they sought to have Mr. Kaval sentenced as a persistent violent felony offender (PVFO), which requires an indeterminate sentence with a maximum of life imprisonment.  The People relied on two prior convictions to establish the PVFO designation: (1) a March 27, 1987, conviction for second-degree robbery; and (2) a November 12, 1991, conviction for attempted second-degree robbery. Convictions older than 10 years from the date of the current offense cannot be used to support a PVFO designation (*See* Penal Law §§ 70.04 [1][b][iv], 70.08[1][a]).  However, time during which the defendant was incarcerated between the date of a prior offense and

---

[1] A defendant may be able to reopen a sentencing procedure upon a showing of prosecutorial fraud, knowing use by a prosecutor of false and material evidence, prejudicial conduct not appearing on the record, newly discovered material evidence or a constitutional violation (CPL 440.20, incorporating by reference CPL 440.10 [b], [c] and [f]-[h]), but even as to those, a court may deny even a meritorious request for relief if the defendant "unjustifiably failed to adduce such matter prior to sentence" (excluding deprivation of the right to counsel) (CPL 440.10 [3][a]).  Absent proof of a deprivation of the constitutional right to counsel, neither the CPL nor any judicially created doctrine allows a defendant a second chance at sentencing based on evidence that was readily available at the time sentence was pronounced.  The People have no such constitutional right.

the date of the present offense is "excluded" from the 10-year period (CPL 70.04[1][b][v]).

At his October 2013 sentencing, Mr. Kaval's attorney challenged the use of the 1987 conviction as a predicate because the records of incarceration submitted by the People did not show a sufficient tolling period between the 1987 conviction and the present crimes. The People bear the burden to prove tolling (CPL 400.15[7][a]; § 400.16 [2]). To be able to use Mr. Kaval's 1987 conviction as one of the two required predicates to sustain a PVFO designation, the People were required to prove that Mr. Kaval was incarcerated for at least 14 years, 9 months, and 14 days between the date of the offense the 1987 conviction and the date of the present offense (January 10, 2012).

The People submitted a "certificate of incarceration" from the New York State Department of Corrections and Community Supervision ("DOCCS"), showing that Mr. Kaval was incarcerated for 14 years, 1 month, and 26 days, which was not sufficient to toll the 1987 conviction. The People stated that there was "approximately a year" of tolling for incarceration in "downstate facilities," but failed to tender any evidence of that incarceration. Notwithstanding the lack of proof, the court designated Mr. Kaval a PVFO and imposed a sentence of 23 years to life.

On appeal, Mr. Kaval argued, as he had below, that the People failed to prove a sufficient tolling period to sentence him as a PVFO. The People conceded their failure. The Appellate Division agreed, holding that "Supreme Court erred in adjudicating him a persistent violent felony offender," vacated his sentence and remitted for resentencing in

accordance with its decision. At resentencing, the People, for the first time, submitted records of Mr. Kaval's incarceration in city jails which identified a total of 1,047 days during which Mr. Kaval had been in New York City Department of Correction (DOC) custody. The record shows that the People obtained the DOC records by subpoena issued six years after Mr. Kaval was first sentenced. The People have never contended those records could not have been obtained at Mr. Kaval's original sentencing and have never offered any explanation for their failure to do so.

Over Mr. Kaval's objection, Supreme Court relied on the city jail records and adjudicated him a PVFO, albeit with a slightly reduced sentence (20 years to life). On appeal from the resentencing (*Kaval II*), the Appellate Division reversed because "[it] [had] previously determined, on the merits, that the defendant's incarceration dates did not amount to a sufficient tolling period" and the People had a "full and fair opportunity" to litigate the issue both before the Supreme Court and the Appellate Division.

II

Although the question really presented here has nothing to do with the law of the case doctrine or the PVFO statute, but rather what deference we should give to the Appellate Division's interpretation of its own prior order, the parties have not addressed that issue in any manner, and so I, too, avoid it even though it should be dispositive.

On the case as presented to us, I disagree with the majority's holding because it is not remotely evenhanded. Absent constitutional violations, parties are not given a chance to retry a matter based on evidence they could have readily obtained and used. That is true

in both the civil and criminal contexts. Because "society's interest in finality of judgments . . . is formidable" (*People v Jackson*, 78 NY2d 638, 647 [1991]), we generally do not allow parties to relitigate matters based on evidence known and available to them at the time they first had a full and fair opportunity to litigate an issue (*Gilberg v Barbieri*, 53 NY2d 285, 291 [1981]; *Central Gen. Hosp. v Hanover Ins. Co.*, 49 NY2d 950 [1980]; *People v Caldavado*, 26 NY3d 1034, 1037 [2015]; *People v Salemi*, 309 NY 208 [1955]).

Here, the People bore the burden of proof, failed to collect the required proof, and thereafter have not offered any reason whatsoever for that failure. The interest in finality of judgments and efficient operation of the judicial system is apparently so important that we have refused to let a criminal defendant challenge her conviction to prove her actual innocence, on the ground that the evidence was previously available to her had counsel been diligent in investigating (*People v Tiger*, 32 NY3d 91 [2018]). In my view, the interest in sentencing Mr. Kaval as a PVFO instead of a second violent felony offender pales in comparison to the interest in ensuring that the convictions of innocent people are vacated.

The majority's holding is not limited by any principle or rule; it appears to allow the People an unlimited number of chances to meet their sentencing obligations, even when they inexcusably neglect to present readily available material evidence that is part of their burden when seeking a sentence. Whether the majority intends to allow merely a second chance or unlimited chances is unclear, but no principle appears by which any limit may be discerned.

The majority's position, which flies in the face of the pervasive rule that litigants receive one full and fair opportunity to prove their case, rests on our summary reversal in *People v Scarbrough* (66 NY2d 673 [1985]), adopting Justice Boomer's dissent in the Appellate Division. The majority here reads his dissent as holding that, because PVFO determinations are "mandatory in nature," the People are entitled to repeated attempts to meet their burden.

*Scarborough* did not involve the failure of the People to adduce sufficient proof. In that case, the People informed the court that they would file a predicate felony statement; the presentence report, available to the court at sentencing, showed that the defendant had a prior felony conviction; and the court advised the defendant of a sentence that could only have been imposed on a predicate felon. *Scarborough*'s reference to the "mandatory nature" is to the "procedure that *must be followed*," specifically, that "*a statement must be filed by the prosecutor before sentence is imposed*" (105 AD2d at 1108, Boomer, J., dissenting [emphasis in original]).

Thus, the "mandatory nature" in *Scarborough* concerns the requirement that the *procedure* be followed: "it was mandatory that the second felony offender statement be filed prior to sentencing. The failure to comply with this mandatory requirement rendered the sentence invalid as a matter of law" (*id.*). That holding does not bear on a case such as this, in which the procedure is followed but the People's "unexplained lack of diligence" (majority opinion at 3) causes a failure of proof at sentencing. Indeed, there is a certain perverseness in reading a statute requiring that the government follow a particular

procedure to conclude that when the government fails to do what a statute commands, it gets a free pass to try again.

The concern expressed in Justice Boomer's dissent, which we adopted, was that the Appellate Division majority's holding in that case would have allowed the predicate felony sentencing scheme "to be circumvented by plea bargaining and by the acquiescence of a sentencing Judge whenever he is inclined to extend leniency in violation of the legislative mandate" (105 AD2d at 1109). No such concern is present in cases such as this one, where the correct procedure is followed, and the People attempt but fail to meet their burden. I do not disagree that the *procedure* to designate someone a PVFO is mandatory. CPL 70.08 reads: "[w]hen the court has found, *pursuant to the provisions of the criminal procedure law*, that a person is a persistent violent felony offender the court must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment" (emphasis added). Neither the provisions of the criminal law, nor any other law, suggest that we should allow successive bites at the apple to those given a full and fair chance to prove their case. The People can offer no support, and the majority cites none, suggesting that the People can keep introducing "new" evidence at successive resentencing hearings despite ample opportunity to do so previously and without some colorable excuse for their prior failure (*cf. People v Havelka*, 45 NY2d 636, 644 [1978]; *People v Dais*, 19 NY3d 335, 344-45 [2012]).

Finally, at a somewhat higher level of abstraction, I take issue with the proposition that because the evidence eventually showed Mr. Kaval met the statutory definition of a

PVFO, he *is* one and holding otherwise would sanction an "illegal" sentence. It is not "illegal" to be found not guilty even when you are, in fact, guilty.[2] The same jury with different proof, lawyers, or arguments might have found you guilty instead. What is illegal is a verdict obtained by ignoring or violating procedural safeguards or constitutional rights. Likewise, it is not "illegal" to be sentenced as a second felony offender when proof could have shown that you were a PVFO. One's PVFO status is not *malum in se*—it is not an inherent moral prohibition that the law merely codifies—rather, it is a creature of statute, fashioned to punish repeat offenders more harshly. The tolling exception is also an artificial mechanism, created to bring more offenders under the PVFO umbrella, even when the predicate convictions would otherwise be too old to justify a lengthy sentence – here, 23 years to life, where Mr. Kaval's crime of conviction was carrying a gun in public. What allows the State to impose the designation is a statutory scheme dependent on mandatory *procedures*, including notice and an opportunity to be heard. What makes an illegal sentence is the flouting of such procedures, including the fundamental procedural rule that litigants who have been afforded a full and fair opportunity to prove their cases are stuck with the first bite they have taken, even if there's a worm inside. The People were afforded all the procedural safeguards prescribed by the statute. They failed to meet their burden

---

[2] As baseball's "Old Arbitrator," Bill Klem famously said, "Sonny, it ain't nothin' till I call it" (David Sturt and Todd Nordstrom, "How You Can Make The Call That Makes A Difference," FORBES, Dec. 6, 2013, available at https://www.forbes.com/sites/davidsturt/2013/12/06/sonny-it-aint-nothin-til-i-call-it/?sh=297ad26a60aa).

and should not be allowed to try again, especially when they do not even deign to offer an

explanation.


Order reversed and case remitted to the Appellate Division, Second Department, for consideration of the facts and issues raised but not determined on appeal to that Court, in a memorandum. Acting Chief Judge Cannataro and Judges Rivera, Garcia, Singas and Troutman concur. Judge Wilson dissents and votes to affirm in an opinion.

Decided December 13, 2022