[729 NYS2d 747]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ANTHONY SORBELLO, Appellant.

Second Department, August 27, 2001

### APPEARANCES OF COUNSEL

*Lynn W. L. Fahey,* New York City (*Barry Stendig* of counsel), for appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn (*Leonard Joblove* and *Caroline R. Donhauser* of counsel), for respondent.

### OPINION OF THE COURT

CRANE, J.

This case presents the first occasion in this department to analyze the effect of CPL 240.75 (L 2000, ch 1, § 48, eff Feb. 1, 2001) on an appeal by a defendant·whose conviction was rendered before the effective date of the new section, where the defendant claims a violation of the *Rosario* rule (*see, People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866; CPL 240.45 [1] [a]).[1]

The defendant was convicted of murder in the second degree (felony murder) and robbery in the second degree. He and his brother stabbed a drug dealer, Paul Salatino, to death and stole his drugs and other property. The defendant confided his role in these crimes to his girlfriend, Judith Irizarry, a week later. Ms. Irizarry, a witness at the trial, relayed this information to her friend, Cheryl Cardona. Ms. Irizarry told Ms. Cardona on February 12, 1996 (the day after the murder), that the defendant had confessed. During jury deliberations at his trial, the defendant learned, from the separate trial of his brother, that Ms. Cardona had given the prosecution an audiotaped interview that included the report and date of her conversation with Ms. Irizarry.

The Supreme Court ruled that the audiotape was not *Rosario* material because Ms. Cardona never testified at the defendant's trial.

Ms. Irizarry's testimony of the defendant's confession to her, whenever that may have taken place, was not the only evidence tying the defendant to the murder. She also testified that on the afternoon of the slaying the defendant had telephoned the victim several times without success. Salatino

---

1. This rule requires the prosecution to turn over to the defense statements previously made by its witnesses to the police, district attorney, or Grand Jury bearing on the subject matter of their testimony. CPL 240.45 (1) (a) codifies the rule requiring the prosecutor to make available to the defendant "[a]ny written or recorded statement, including any testimony before a grand jury and an examination videotaped pursuant to section 190.32 of this chapter, made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony."

was the defendant's heroin supplier. The defendant and his brother told Ms. Irizarry that they were going out to make some money to buy their drugs from Salatino. When the defendant left the house he was wearing jeans, sneakers, and a yellow down jacket belonging to the cousin of Ms. Irizarry.

The brothers returned after midnight. The defendant was no longer wearing his sneakers or shirt. The yellow jacket was turned inside out. It had circular dirt spots on the front sleeves, and the defendant asked Ms. Irizarry to wash it. Shortly thereafter, the brothers divided $500 cash and bags of heroin stamped with skull and bones—the same type of packaging Paul Salatino used.

The yellow jacket was eventually turned over to the police. An analysis of the stains on the sleeve revealed blood containing DNA of Paul Salatino.

In addition to having described the crime to Ms. Irizarry, in March 1996, the defendant went searching by car for drugs in the company of Ms. Irizarry and her Aunt Laurie. He boasted that he could acquire drugs without paying by robbing and beating the drug dealers. He would take them all out as he had already done. Ms. Irizarry corroborated her aunt's testimony with greater specificity: "He told Laurie that he—that he killed Paulie."

*ROSARIO* CLAIM

The defendant's sole point on this appeal is that the Supreme Court erred in ruling that Ms. Cardona's statement to the effect that on February 12, Ms. Irizarry told her that the defendant had confessed to her, was not *Rosario* material. We conclude that it is unnecessary to reach this issue—whether the recorded statement of a nonwitness embodying the report of a witness constitutes material required to be turned over to the defense under CPL 240.45 (1) (a) and *People v Rosario* (*supra*; *see, People v Kelly,* 209 AD2d 436, *affd* 88 NY2d 248 [where we avoided expressly deciding this issue by holding that the statement of the nonwitness, a parole officer to whom the prosecutor's witness, the arresting officer, had given a statement, was not within the possession or control of the People]; *see also, People v Perez,* 65 NY2d 154, 158-159 [applying the *Rosario* rule to taped statements by a prosecution witness made to private parties where the prosecutor had possession of the tapes]). The reason it is unnecessary to decide this issue is an amendment to the Criminal Procedure Law introduced through the Sexual Assault Reform Act of 2000 (L 2000, ch 1 [hereinafter SARA]), which permits the use of harmless error analysis in cases of *Rosario* violations.

To appreciate this amendment it is important to consider the decisional law it was designed to overcome. In *People v Ranghelle* (69 NY2d 56), the Court of Appeals reiterated a rule that a complete failure to deliver *Rosario* material was per se error requiring reversal and a new trial. This consequence was softened for cases on collateral review pursuant to CPL 440.10. Defendants with cases in this posture had to show "a reasonable possibility that the failure to disclose the *Rosario* material contributed to the verdict" (*People v Jackson*, 78 NY2d 638, 649). In other words, the harmless error analysis would apply in cases of collateral review in contrast to direct appeal. Over time, other exceptions to the per se rule of *People v Ranghelle* were recognized where the material is lost or destroyed, is the duplicative equivalent of material that was disclosed, or its turnover was delayed rather than avoided entirely (*see, People v Banch,* 80 NY2d 610, 616-617). In a further refinement, the Court of Appeals held that the *Jackson* harmless error analysis would apply as well to a postjudgment CPL 440.10 motion whether or not the original conviction was still subject to direct appeals (*see, People v Machado,* 90 NY2d 187, 192; *see also,* the treatment of these exceptions in Baker, Outside Counsel, *The 'Rosario' Per Se Rule: Rest in Peace*, NYLJ, Mar. 14, 2001, at 1, col 1, at 9, col 3, n 20 and text at 9, col 2, n 31).

The Court of Appeals has recognized that the *Rosario* and *Ranghelle* rules are not of constitutional dimension (*see, People v Jackson, supra,* at 648; *People v Jones,* 70 NY2d 547, 555 [Bellacosa, J., concurring]). Indeed, Judge Bellacosa chafed at the per se error rule, calling it a "law enforcer's nightmare and a perpetrator's delight" (*People v Jones, supra,* at 557). He recommended amending CPL 470.05, 240.20 and 240.45 to overcome "the per se-ness of this exalted court-made rule" (*People v Jones, supra*). The Appellate Division, Third Department, has characterized the *Rosario* rule as "in essence * * * a discovery rule" (*People v Giordano,* 274 AD2d 748, 749).

LEGISLATIVE CHANGE

After Judge Bellacosa's suggestion of amending the Criminal Procedure Law, the Advisory Committee on Criminal Law and Procedure established by the Chief Administrator of the Courts (hereinafter the Advisory Committee) pursuant to Judiciary Law § 212 (1) (g), beginning in 1990 proposed legislation to supersede *People v Ranghelle (supra)*. Steadfastly, the Advisory Committee retained this proposal on its list of endorsed measures. At first it would have amended CPL 240.20 to provide that nonwillful failures to turn over *Rosario* material

would not constitute a ground to set aside a verdict, vacate a judgment, or reverse or modify a judgment on appeal "unless there is a reasonable possibility that such failure might have contributed to defendant's conviction" (*see,* Report of Advisory Comm on Criminal Law and Procedure, 1990 McKinney's Session Laws of NY, at 2843, 2878, 2883-2884 and draft of proposed CPL 240.20 [3], at 2890; 1991 McKinney's Session Laws of NY, at 2333, 2337-2338 and draft, at 2344; 1992 McKinney's Session Laws of NY, at 3003, 3006-3007, 3011-3012 and draft, at 3019; 1993 McKinney's Session Laws of NY, at 3003, 3007-3008, 3012-3013 and draft, at 3020). In 1994, the proposal, in substance driven by the same concern to overrule *Ranghelle,* took the form of an amendment to CPL 470.05. This, however, was more limited than the earlier version amending CPL 240.20 in that it applied only to direct appeals of convictions. In that context, to prevail a defendant-appellant would have to demonstrate that, had there been disclosure, "there is a reasonable possibility that the outcome would have been different" (1994 McKinney's Session Laws of NY, at 3089, 3177, 3181 and draft of proposed CPL 470.05 [1] [a], [b], at 3208-3209; 1995 McKinney's Session Laws of NY, at 2597, 2601, 2604-2605 and draft, at 2630; 1996 McKinney's Session Laws of NY, at 2733, 2735-2736, 2738 and draft, at 2749; 1997 McKinney's Session Laws of NY, at 2713, 2715, 2718 and draft, at 2728-2729; 1998 McKinney's Session Laws of NY, at 2079, 2081, 2084 and draft, at 2094; 1999 McKinney's Session Laws of NY, at 2105, 2107, 2109 and draft, at 2119; 2000 McKinney's Session Laws of NY, at 2073, 2075, 2077-2078 and draft, at 2088).

SARA

Success crowned these decade-long efforts of the Advisory Committee. The Legislature enacted SARA. Buried deep within[2] this act can be found a new section of the Criminal Procedure Law, CPL 240.75:

"The failure of the prosecutor or any agent of the prosecutor to disclose statements that are required to be disclosed under subdivision one of section 240.44 or paragraph (a) of subdivision one of section 240.45 of this article shall not constitute grounds for any court to order a new pre-trial hearing or set aside a conviction, or reverse, modify or

---

2. According to Mark M. Baker, Esq. in his New York Law Journal article (*supra,* at 9, col 1), the per se rule met its "death blow" from a provision "buried deep in the gizzard of the Sexual Assault Reform Act of 2000."

vacate a judgment of conviction in the absence of a showing by the defendant that there is a reasonable possibility that the non-disclosure materially contributed to the result of the trial or other proceeding; provided, however, that nothing in this section shall affect or limit any right the defendant may have to a re-opened pre-trial hearing when such statements were disclosed before the close of evidence at trial."

This new section broadened the proposal of the Advisory Committee to cover pretrial proceedings (with a narrow exception for delayed discovery of *Rosario* material uncovered before the close of trial evidence), made explicit that the burden would be on the defendant to show prejudice, and eliminated the non-willful limitation on the prosecutor's failure to turn over these materials. CPL 240.75 as enacted also expanded the procedure to which the Advisory Committee's proposal had shrunk when it started to opt for an amendment to CPL 470.05, because in that context the proposal would have operated only on direct appeal from a conviction. As enacted, CPL 240.75 operates at all levels of the litigation—pretrial, trial, posttrial, and appeal.

RETROACTIVITY

SARA provided an effective date of February 1, 2001 (L 2000, ch 1, § 57). This appeal was argued on April 16, 2001, some 2½ months after the effective date. The appeal itself, however, was perfected on September 22, 2000. It might have been brought on for argument and possible decision before February 1, 2001. This did not occur. We hold, nonetheless, that the new section applies to this decision and that the defendant was required to demonstrate a reasonable possibility that the nondisclosure of what he contends was *Rosario* material with respect to Ms. Irizarry materially contributed to the result of the trial.

Statutes may be prospective or retroactive in the way they operate. The determination of how a statute will operate may require a search of legislative intent (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 51). Moreover, procedural statutes will generally be construed to operate retroactively (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 55). There is little doubt that the Legislature intended CPL 240.75 to be applied retroactively to all cases in prosecution or appeal as of its effective date.

First of all, the provision was inserted in a statute governing procedure in criminal cases. Secondly, it affected the remedy to be accorded defendants whose *Rosario* rights have been

violated regardless of the stage at which their case was then pending. Third, in comparable Federal circumstances, the enactment of provisions for the turnover of witness statements was held procedural in *United States v Papworth* (156 F Supp 842, 852 [ND Tex, 1957] ["(A) statute which controls the admissibility in evidence of certain statements relevant only for the purpose of impeachment is 'procedural' and not 'substantive' in nature, for it does not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt"], *affd* 256 F2d 125 [5th Cir 1958], *cert denied* 358 US 854). Finally, Mark M. Baker, Esq., in *The 'Rosario' Per Se Rule: Rest in Peace* (*supra*, at 9, col 2), states "The new law will apply to all appeals * * * heard after the effective date. At first blush, and absent a determination to the contrary, it does not appear that this will pose any ex post facto problem. CPL § 240.75 is a procedural, as opposed to a substantive criminal statute, and 'the Ex Post Facto Clause of the Constitution applies only to penal statutes which disadvantage the offender affected by them' " (*Abed v Armstrong,* 209 F3d 63, 66 [2d Cir], *cert denied* 531 US 897).[3]

A finding that the statute is procedural, however, does not necessarily establish its application to cases already pending. The legislative intent remains the lodestar. In *Majewski v Broadalbin-Perth Cent. School Dist.* (91 NY2d 577), remedial legislation amending the Workers' Compensation Law to curtail the liability of employers for contribution or indemnification unless based on grave injury to the employee was applied prospectively only. The Court of Appeals analyzed legislative intent and found, despite the immediate effectiveness of the measure, that it was not intended to apply retroactively and would be limited to prospective application to actions filed after the effective date (*see, Majewski v Broadalbin-Perth Cent. School Dist., supra,* at 590). By contrast, a different statute was given retroactive application in *Matter of OnBank & Trust Co.* (90 NY2d 725) to avoid undermining its remedial purpose. Both of these cases dealt with essentially substantive changes in the law, one dealing with the repudiation, in part, of *Dole v Dow Chem. Co.* (30 NY2d 143), and the other with the right of a trustee of a common trust fund to secure management fees from that fund. The substantive ingredient of a procedural amendment to the CPL persuaded this Court, in *People v Parmelee* (184 AD2d 534), not to apply retroactively to a mo-

---

**3.** This does not necessarily mean that appeals heard before the effective date but decided thereafter will escape the sweep of CPL 240.75.

tion made before the effective date a new procedure to reduce charges in an indictment pursuant to CPL 210.20 (1-a). One factor that influenced this Court in *Parmelee* was the delayed effective date of the amendment.

In a civil procedural context, this Court, in *Wade v Byung Yang Kim* (250 AD2d 323), concerned with the fairness of retroactive application of the amendment of CPLR 3211 (e), modified the rigor of applying it to all pending cases. There, the amendment had a delayed effective date from August 8, 1996, to the following January 1 (as is common with amendments to the CPLR). It required a defendant to move within 60 days to dismiss an improperly-served summons and complaint. This Court applied a modified retroactivity by running the 60 days in pending actions from the effective date of the amendment rather than from the earlier date the answer had been served. A similar compromise was reached in *Brothers v Florence* (95 NY2d 290), giving a grace period to causes of action that would be immediately barred by the amendment to CPLR 214 (6) reducing the period for commencing legal malpractice claims from six to three years. This amendment, effective immediately, represented a legislative rejection of the holdings in *Santulli v Englert, Reilly & McHugh* (78 NY2d 700) and *Sears, Roebuck & Co. v Enco Assocs.* (43 NY2d 389; *see also, Matter of Gleason [Michael Vee, Ltd.],* 96 NY2d 117, 122 [including in the retroactivity analysis "whether the statute was designed to rewrite an unintended judicial interpretation"]).

The Legislature, in adopting CPL 240.75, was, in effect, overruling *People v Ranghelle (supra)* and the per se result of a *Rosario* violation. The Court of Appeals, which authored *Ranghelle*, was en route to abandoning it while riddling the rule with exceptions. Had the Court overruled *Ranghelle*, a question would follow of the retroactivity of its replacement. The answer would turn on the three factors enunciated in *People v Mitchell* (80 NY2d 519, 528) and *People v Pepper* (53 NY2d 213, 220, *cert denied* 454 US 967): (1) the purpose served by the new rule; (2) the extent of reliance on the old rule; and (3) the effect of retroactive application on the administration of justice (*see, People v Martello,* 93 NY2d 645, 651; *People v Favor,* 82 NY2d 254, 262; *People v Kramer,* 267 AD2d 328, 330-331).

Guided by all these principles, we conclude that CPL 240.75 must be given retroactive application. Its intent and effect was to replace the judicially-wrought per se rule with a standard of harmless error. The burden of proving prejudice is now lodged

with the defendant.[4] While the per se rule was in effect since *Ranghelle* was decided in December 1986, its applicability had been narrowed over the years by exception upon exception. Trial and appellate lawyers were given ample warning by the delayed effective date for CPL 240.75 of over three months from the approval date, October 19, 2000. We must remember, also, that the *Rosario* rule is one regulating the admission of evidence and impeachment of witnesses (*see, United States v Papworth, supra*). It is simply a discovery rule (*see, People v Giordano, supra,* 274 AD2d 748, 749). Any unfairness in the retroactivity of CPL 240.75[5] can be mitigated in an appropriate case by holding the appellate decision in abeyance pending remittal to the trial court to give the parties an opportunity to develop the record on the issue of harm and to afford the defendant an opportunity to demonstrate a reasonable possibility that the nondisclosure materially contributed to the result (*see, People v Felix-Torres,* 281 AD2d 649).

PREJUDICE

We need not and do not reach the possibility of remitting this matter to the trial court for a hearing. Here, the record is ample to determine that the nondisclosure was harmless. Even if Ms. Irizarry had been cross-examined about the discrepancy in the date when she learned from the defendant of his complicity in this crime, it would have added little to the impeachment of this witness already in the record. When weighed against all the other evidence against the defendant, the omission of this possible item of cross-examination is completely absent of prejudice to the defendant.

Nothing in our discussion of CPL 240.75 should be taken as a determination that Ms. Cardona's recorded statement reporting what Ms. Irizarry told her constitutes *Rosario* material or should have been turned over to the defendant pursuant to

---

4. The Appellate Division, First Department, is in accord with the view that a showing of prejudice is now required because CPL 240.75 eliminates the per se rule and that the new section applies on the theory that cases on direct appeal are generally decided in accordance with the law as it exists at the time of decision (*see, People v Wolf,* 284 AD2d 102, 104, citing *People v Vasquez,* 88 NY2d 561, 573).

5. Although he filed no reply brief, the defendant might have objected to the People's reliance in the respondent's brief on CPL 240.75 for the first time in this Court. "It is settled law, however, that a court applies the law as it exists at the time of appeal, not as it existed at the time of the original determination * * * and new questions of law may be raised for the first time on appeal if they could not have been presented to the trial court" (*Post v 120 E. End Ave. Corp.,* 62 NY2d 19, 28-29). The defendant could also have argued in a reply brief how he was prejudiced by the allegedly withheld *Rosario* material.

CPL 240.45 (1) (a). We do not reach the defendant's contention in this regard.

SENTENCE

We modify the defendant's sentence so as to provide that the term of imprisonment imposed on the convictions of murder in the second degree and robbery in the second degree shall run concurrently. The robbery was the predicate felony for the defendant's conviction of murder in the second degree. Hence, the robbery conviction was one of the material elements of the murder conviction, and the sentences must run concurrently (*see*, Penal Law § 70.25 [2]). As so modified, the judgment is affirmed.

KRAUSMAN, J. P., H. MILLER and SCHMIDT, JJ., concur.

Ordered that the judgment is modified, on the law, so as to provide that the sentences imposed on the defendant's convictions of murder in the second degree and robbery in the second degree shall run concurrently; as so modified, the judgment is affirmed.