*578 OPINION OF THE COURT
Seymour Rotker, J.[1]
By motion dated March 15, 2005, and reply affirmation, dated June 7, 2005, defendant seeks an order of the court to vacate his judgment of conviction upon the grounds that his “constitutional right to due process and a fair trial [were violated by the prosecution] by failing to disclose the Criminal History and the prior statements of its main witness, Geovanny Watsoli, and by failing to correct Watson’s false testimony.”[2]
In response, the People have filed an affirmation in opposition dated May 26, 2005. Their arguments in opposition are outlined within the court’s decision.
For the reasons stated herein, defendant’s motion is denied.
Facts
On September 25, 1996, a seven-count indictment was filed with the court charging defendant with two counts of murder in the second degree (Penal Law § 125.25 [1], [2]); one count of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]); one count of reckless endangerment in the first degree (Penal Law § 120.25); one count of criminal possession of a weapon in the second degree (Penal Law § 265.03); and two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [1], [4]).
The charges stem from the July 17, 1995 shooting of Richie Myers, by defendant, which resulted in his death and the attempted shooting of Geovanny Watson. This incident occurred in Queens County at the corner of 134th Avenue and Guy Brewer Boulevard. The evidence at trial established that defendant, in an attempt to shoot Geovanny Watson, a complainant and witness for the prosecution, shot and killed Richie Myers. Geovanny Watson testified at trial on behalf of the People.[3]
*579 Approximately one month after the shooting, on August 15, 1995, Watson was arrested and charged with possession of a weapon during a police organized buy and bust operation. Shortly after his arrest, Watson told the police that he had just purchased the gun. He told other detectives later that evening about defendant’s crime and how defendant had shot and killed Myers in his presence.[4]
Tracy Johnson, another prosecution witness, had been with the deceased, Myers, a few storefronts away from the shooting, moments before it occurred. He observed defendant spraying bullets in an arc-like fashion in the direction of Watson who was across the street. Johnson told police at the scene that defendant had shot Myers.
Defendant was arrested in August 1996, when it was discovered that he was in Detroit, Michigan, and he was returned to New York by detectives. Upon his return to this jurisdiction, he was identified by Watson in a lineup.
At trial, Detective Joseph Amato, who microscopically tested 15 9 millimeter casings and two bullets recovered in the vicinity of the shooting, testified that the casings were consistent with the bullets recovered and that the patterns were consistent with an automatic weapon. Nevertheless, even if a weapon was recovered in the shooting, it would not have been possible to definitively link that ballistics evidence to a recovered weapon, if that was the case, because the fragment of bullet removed from the deceased was too small for analytical comparison.
Defendant Burton was convicted after a trial by jury, on April 13, 1999, of: manslaughter in the second degree (Penal Law § 125.15); attempted murder in the second degree (Penal Law §§ 110.00, 125.25); reckless endangerment in the first degree (Penal Law § 120.25); and criminal possession of a weapon in the second degree (Penal Law § 265.03). Defendant was sentenced as a second violent felony offender to concurrent prison terms of 7V2 to 15 years, I2V2 to 25 years, 31h to 7 years, and 71/2 to 15 years, respectively (Katz, J.).
Posttrial Procedural History
Prior to sentencing, defendant filed a pro se motion to set aside the verdict. His motion was denied when the court found *580 defendant’s arguments meritless. (See decision, dated Apr. 13, 1999, Katz, J.)[5] Thus, defendant was sentenced on April 13, 1999 after the court’s decision, as noted above.
Defendant appealed his conviction to the Appellate Division and on September 24, 2001 his conviction was affirmed. (See People v Burton, 286 AD2d 772 [2d Dept 2001].)[6] In its decision, the Appellate Division noted that defense counsel elicited from the prosecution’s main witness that he lied to the police in his initial statement, that he lied to the grand jury, and that he was a drug dealer, and that the trial court’s limitation on counsel to further impeach the witness was proper, despite defendant’s assertions to the contrary, because the issues raised were too slight, remote or conjectural to have any legitimate impact in deciding the facts in issue. (See Burton, supra.) Moreover, the defendant’s remaining contentions, including his claim of ineffective assistance of counsel, was deemed meritless. Leave to appeal to the Court of Appeals was denied to defendant on December 28, 2001. (See People v Burton, 97 NY2d 679 [2001].)
Thereafter, defendant filed a motion to vacate his judgment of conviction pursuant to CPL 440.10 based upon the following grounds: police reports of Watson’s interviews and an officer’s memo book were not turned over to defendant in violation of People v Rosario (9 NY2d 286 [1961]); a police report of a tipster’s information was not provided in violation of Brady v Maryland (373 US 83 [1963]); and a cooperation agreement between Watson and the People was not disclosed. Additionally, in this motion, defendant claimed that an individual by the name of Jason Morrison had evidence suggesting that Watson may have participated in the shootout and that this was newly discovered evidence. Furthermore, defendant argued that counsel was ineffective for failing to address the disclosure violations and for failing to conduct a proper investigation of the crime.
*581 Defendant’s CPL 440.10 motion was denied in a decision by Justice Katz on December 18, 2002. In its decision, the court held that defendant’s claim of ineffective assistance of counsel was already determined on the merits by the Appellate Division and was therefore procedurally barred. As to any new ineffective assistance of counsel arguments, the court held that these arguments were also barred pursuant to CPL 440.10 (2) (c). Moreover, the court held that the claim by defendant as to material not disclosed was barred “because the defendant could [with] due diligence have readily made facts in issue appear on the record but unjustifiably failed to do so. CPL § 440.10 (3) (a).” (See decision at 2, dated Dec. 18, 2002, Katz, J.) Defendant’s newly discovered evidence claim was also rejected by the court in its decision because counsel was aware of it at the time of trial (CPL 440.10 [1] [g]). Thus, defendant’s motion was denied in its entirety. (See decision, dated Dec. 18, 2002, Katz, J.)[7]
Defendant filed a petition for a federal writ of habeas corpus. Thereafter, the District Court granted defendant permission to file an application for a writ of error coram nobis with the Second Department. Thus, in his Second Department application, defendant asserted that his appellate counsel was ineffective for failing to assert that trial counsel was ineffective.[8] The Appellate Division held, in a decision dated June 1, 2004, that defendant failed to establish that he was denied effective assistance of appellate counsel. (See People v Burton, 8 AD3d 292 [2d Dept 2004].) Leave to appeal to the Court of Appeals was thereafter denied. (See People v Burton, 3 NY3d 671 [2004].)
As represented by the People, the District Court for the Eastern District of New York granted defendant the right to add claims of a Brady violation and of ineffective assistance of counsel to his federal petition. The federal petition was stayed pending the outcome of the state court proceedings. (See People’s affirmation at 16.) Defendant then filed the within motion.
*582 Decision
Initially, defendant claims that he was not provided with Rosario material related to the testimony of Geovanny Watson. Specifically, defendant alleges in this claim that the prosecution failed to turn over “the crime report” (annexed to defendant’s motion as exhibit 6), and the “complaint report” (annexed to defendant’s motion as exhibit 4), related to Watson’s arrest on a gun possession charge, which he subsequently received pursuant to a Freedom of Information Law (FOIL) request.
Moreover, defendant asserts that a Brady violation occurred because favorable evidence possessed by the prosecution was not turned over, which included an initial statement by Geovanny Watson in which he did not mention witnessing the shooting of Myers or about being the intended victim of the shooting, and that, during his August 15, 1995 arrest, Watson agreed to work as an informant for the police to help them purchase guns.[9]
Furthermore, defendant contends that the prosecution failed to correct Watson during his trial testimony when he lied when describing his arrest on August 15, 1995; when he testified that he was the intended victim of the shooting and thus carried the gun he was arrested for possessing because he feared defendant; and when he lied about cooperating with the police (to purchase guns).
In opposition, the People argue that defendant has not demonstrated “due diligence” as required by statute to assert a claim of alleged newly discovered evidence pursuant to his FOIL request. Additionally, the prosecution claims that no prejudice occurred, even if a Rosario violation is found.
Furthermore, the People contend that defendant’s claim of a Brady violation is meritless.
In response to defendant’s claim that his conviction should be vacated because information was not turned over to him—that the People’s witness, Watson, did not mention defendant’s crime to the police at the time of his arrest and that Watson claimed he would work with the police, as an informant, to assist them in purchasing guns at the time he was arrested—the prosecution asserts defendant is incorrect on the law and facts. First, the People claim that a document provided by defendant, which he annexes as an exhibit to his motion, indicates that Watson *583 did report defendant’s crime within approximately an hour and a half of his arrest and thus refutes his allegation. Second, there is no evidence of any cooperation by Watson with the police to act as an informant; thus, no Brady violation occurred. Moreover, any claims that Watson perjured himself are discredited by the reports themselves that defendant now seeks to rely upon to support his claim.
Defendant’s Claims of Newly Discovered Evidence and/or Rosario or Brady Violations are Meritless
I. Defendant’s Newly Discovered Evidence Claim
Defendant moves to vacate this judgment, claiming that he was not provided with Rosario and Brady material which consisted of what he claims is “newly discovered evidence” consisting of a crime report and complaint report related to the arrest of Geovanny Watson on August 15, 1995.
First addressing defendant’s claim of newly discovered evidence, pursuant to CPL 440.10 (1) (g), a defendant may move to vacate a judgment upon the ground that new evidence has been discovered “which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable.” The motion itself must also be made with due diligence after the discovery of the claimed new evidence. (See id.)
To be considered “newly discovered evidence,” such claimed evidence must meet the following requirements:
“ ‘(1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could have not been discovered before the trial by the exercise of due diligence; (4) it must be material to the issue; (5) it must not be cumulative to the former issue; and, (6) it must not be merely impeaching or contradicting the former evidence.’ ” (See People v Richards, 266 AD2d 714, 715 [3d Dept 1999], quoting People v Salemi, 309 NY 208, 215-216 [1955], cert denied 350 US 950 [1956], quoting People v Priori, 164 NY 459, 472 [1900]; see also People v Gurley, 197 AD2d 534 [2d Dept 1993].)
Applying these standards to the present case, defendant has failed to meet his burden.
*584 Initially, defendant’s argument that the reports are “newly discovered” fails to meet the above requirements. As defendant claims, the reports could only have been used as impeachment evidence. (See e.g. People v Reyes, 255 AD2d 261 [1st Dept 1998].) Furthermore, it is unlikely that these reports would have changed the result of the trial. (See id.; People v Stover, 254 AD2d 377 [2d Dept 1998] ,)[10]
Moreover, defendant has not demonstrated that these reports could not have been discovered before trial with the exercise of due diligence, one of the requirements for them to be considered newly discovered evidence. (See People v Stover, 254 AD2d 377 [2d Dept 1998].)
Furthermore, upon a review of the exhibits annexed to the People’s response, defendant’s FOIL request which related to Watson’s case when he was arrested on August 15, 1995 was dated February 12, 2003. Records provided by the District Attorney’s Office indicate that the request was actually received in September 2002. Nevertheless, defendant was convicted on April 13, 1999, almost SVa years before his request was made. Defendant has not shown due diligence in seeking this information which he now claims was in the possession of the prosecutor’s office since Watson’s arrest in August 1995. Therefore, defendant has not exercised due diligence in pursuing this claim as required by statute. (See e.g. People v Friedgood, 58 NY2d 467, 470-471 [1983] [defendant’s three-year delay after conviction to raise claim of newly discovered evidence asserting that conviction should be vacated by CPL 440.10 motion showed lack of due diligence on part of defendant and motion properly denied without a hearing].)
In any event, as stated above, there is no merit to defendant’s claim that had he possessed the information, the result of the trial would have been different. As held by the Appellate Division, defense counsel adequately impeached Watson during cross-examination. Any issue as to whether he told the police about defendant’s crime at the time of his own arrest is collateral. Furthermore, the District Attorney’s Office has represented that Watson did not cooperate with the police to purchase guns.
The power to vacate a conviction based upon an argument asserting that there exists “newly discovered” evidence rests *585 within the unlimited discretion of the lower court. (See People v Santos, 1 NY3d 548 [2003]; People v Baxley, 84 NY2d 208 [1994].)
This court has reviewed defendant’s claims and finds them to be without merit. Defendant has failed to establish that this was newly discovered evidence pursuant to CPL 440.10 (1) (g).
II. Defendant’s Brady Violation Claim
Despite this court’s rejection of his newly discovered evidence claim, this court will address the merits of defendant’s assertion, pursuant to CPL 440.10 (1) (h), whereby he alleges that his conviction was obtained in violation of his due process right to pretrial disclosure of Brady material, the reports related to Watson’s case, as noted above. The duty of a prosecutor to disclose exculpatory material includes the disclosure of evidence impeaching the credibility of a prosecution witness whose testimony may be determinative of innocence or guilt. (See Baxley, supra at 213, citing other cases.)[11] Thus, this court will first look at the issues and/or documents which defendant claims are Brady material.
First reviewing the crime report from Watson’s own arrest, it is this court’s finding that it does not constitute Brady material. The issue defendant raises is that Watson did not tell the police about defendant’s crime when he was arrested. This is refuted by the report provided by defendant as exhibit 7 to his motion, as noted previously.
The report defendant now refers to as Brady material does not mention defendant. It is not favorable to defendant, not material to guilt or innocence and its disclosure would not likely *586 have any effect on the verdict. Furthermore, the report in defendant’s possession, which is annexed to defendant’s motion as exhibit 7, is filled out by Detective O’Sullivan and it indicates that he and Detective O’Connor of the 113th Precinct interviewed Watson when he was arrested. Thus, Watson made a statement to them about defendant’s crime. The multi-page crime report annexed as defendant’s exhibit 6 was taken by different officers, Detective Delaney of the Queens Narcotics District, the detective who arrested Watson for the gun possession, and his partner, Detective Skinner. Thus, it is of no consequence if Watson did not mention defendant’s crime to the arresting detectives. This is not exculpatory information and not Brady material and would not likely have an impact on the verdict.
Defendant’s next contention that a Brady violation occurred based on Watson allegedly having some type of agreement with the police, presumably for his own benefit, to purchase guns for them is equally without merit. There is no evidence that any such agreement existed or that Watson ever purchased guns by working in conjunction with the police department.
III. Defendant’s Rosario Violation Claim
A defendant must demonstrate prejudice to succeed upon a Rosario violation claim made by way of a CPL 440.10 motion.[12] (See People v Machado, 90 NY2d 187 [1997]; People v Jackson, 78 NY2d 638 [1991].) Here, defendant has failed to show prejudice, i.e., a reasonable possibility that the prosecution’s failure to make a Rosario disclosure materially contributed to the verdict. (See Machado, supra at 188-189.)[13]
Defendant has not demonstrated that prejudice resulted from a failure to turn over the documents he now possesses. First, annexed as exhibit 7 to defendant’s motion, is the complaint report from Watson’s arrest of August 15, 1995. In that report it outlines that Watson told the detectives in an interview at approximately 11:45 p.m. on that date that he had a fight with defendant on the day of the shooting about selling drugs. He then *587 goes on to describe the shooting on July 17, 1995 when he saw defendant shoot Myers. Thus, defendant’s claim that Watson did not report defendant’s crime when Watson was arrested for the gun possession is refuted in this document and it does not further his argument that Watson did not report it at the time of his arrest. Thus, the record amply demonstrates that nondisclosure of the report that does not mention defendant was harmless. (See People v Sorbello, 285 AD2d 88 [2d Dept 2001].)
Next, in further support that prejudice has not been demonstrated is the decision rendered by the Appellate Division when it affirmed defendant’s conviction. In its decision, the Appellate Division ruled that the trial court’s limitation on defense counsel’s cross-examination was proper. As stated above, the Appellate Division noted that defense counsel had elicited from Watson that he lied to the police in his initial statement, that he lied to the grand jury, and that he was a drug dealer, and that the trial court’s limitation on counsel to further impeach the witness was proper. The Appellate Division found that the issues raised on cross-examination of Watson were too slight, remote or conjectural to have any legitimate impact in deciding that facts in issue in reaching its holding. (See Burton, 286 AD2d 772 [2d Dept 2001], supra.) Thus, defendant cannot now and has not demonstrated prejudice as a result of not having the documents at issue. Thus, even if a Rosario violation occurred, it was harmless error and it has not been demonstrated that the outcome of the trial would have been different. (See CPL 240.75; see also People v Reyes, 255 AD2d 261 [1st Dept 1998] ,)[14]
*588 The court has reviewed all of defendant’s contentions and finds them either procedurally barred or without merit as outlined herein.
Accordingly, defendant’s motion is denied in its entirety.

. This matter has been referred here for decision as a result of the retirement of Justice Katz, who presided over the trial in this matter and who addressed a prior CPL 440.10 motion by defendant.

. In a decision dated June 16, 2000, Justice Katz granted reargument to defendant on his motion for the “rap sheets” of Geovanny Watson and Tracy Johnson when defendant alleged that only part of the information requested was provided by the People. The court held that the prosecutor properly disclosed all the information it was required to provide. (See decision, dated June 16, 2000, Katz, J.)

. Testimony at trial established that a dispute existed between defendant and Watson over drug turf and that they had argued earlier that day and de *579 fendant had held a gun to Watson’s stomach which misfired when he pulled the trigger.

. Thereafter, Watson was convicted in or about February 1996 upon his plea of guilty to criminal possession of a weapon in the third degree and was sentenced to a probationary term of five years.

. Defendant asserted that the guilty verdict should have been set aside because: Geovanny Watson committed perjury; the prosecutor’s summation was unduly prejudicial; the evidence of guilt was insufficient; and that his intent was not proven.

. On appeal, defendant claimed that the trial court violated his right to confront witnesses by precluding certain cross-examination of the People’s witness, Watson, regarding his motive to lie, including bias and hostility against defendant. Moreover, defendant himself in a supplemental brief, in addition to the brief filed by assigned counsel on defendant’s behalf, argued that trial counsel was ineffective for conducting fruitless cross-examination that sometimes inculpated defendant.

. Defendant sought leave to appeal denial of this postjudgment motion, which request was denied by the Appellate Division on or about September 3, 2002.

. The various allegations that defendant raised upon the issue of trial counsel’s ineffectiveness, an argument he claims appellate counsel did not raise and was thus ineffective, are outlined in the People’s affirmation in opposition (at 12). Also outlined therein are the arguments set forth by the People in opposition to defendant’s claims.

. This alleged information was obtained by defendant in the same documents that form the basis of his Rosario violation claim.

. Per se error rule for failure to provide Rosario material in CPL 440.10 motion is inapplicable. (See People v Machado, 90 NY2d 187 [1997]; People v Jackson, 78 NY2d 638 [1991].) A defendant is required to show that he was prejudiced by the conduct that is the subject of the motion, which defendant has failed to do here. (See id.)

. Brady material consists of material that is favorable to the defendant; that is material to guilt or punishment; that is known to the prosecution; and of which the defense is unaware and cannot obtain due to lack of sufficient facts. (See e.g. United States v Agurs, 427 US 97 [1976]; People v LaValle, 3 NY3d 88 [2004].)
Although the Supreme Court in Agurs initially distinguished three factual situations and appeared to define for each a separate standard of materiality (see Agurs, 427 US at 103-107), the Supreme Court in United States v Bagley (473 US 667 [1985]) agreed upon a reformulation of the Agurs standards. In Bagley (at 682), the Court held that in considering the materiality standard for Brady claims, “[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” (See United States v Campos, 1994 WL 590908, *4, 1994 US Dist LEXIS 15549, *9-10 [D Kan, Oct. 20, 1994], quoting Bagley, 473 US at 682.)

. As stated by the Court of Appeals, the Rosario rule is not of constitutional dimension. (See People v Sorbello, 285 AD2d 88 [2d Dept 2001], citing People v Jackson, 78 NY2d 638 [1991], and other cases.)

. Even if this court were to find that the documents defendant now claims are Rosario material for purposes of CPL 440.10 relief, if a defendant could have, with due diligence, placed facts on the record to support his Rosario violation claim, but did not, the court may deny his motion pursuant to CPL 440.10 (3) (a).

. Criminal Procedure Law § 440.30 (4) (b) and (d) (i) state that the motion may be denied without conducting a hearing even when the court reaches the merits. Under CPL 440.30 (4) no hearing need be conducted when:
“(b) The motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts . . . ; or . . .(d) An allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true.”
Here, defendant has not conformed to the statute as his claims, that Watson had a cooperation agreement or that he did not report defendant’s crime *588 when he was arrested himself, are based solely on his own allegations and are unsupported. Defendant has not sustained his burden to create an issue of fact that would entitle him to a hearing.