(January 14, 2010)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALIK A. MOSBY, Appellant. [894 NYS2d 534]—

Kavanagh, J.

After selling illegal drugs to undercover officers on August 10, 2005 and August 19, 2005, defendant was charged with three counts of criminal possession of a controlled substance in the third degree and five counts of criminal sale of a controlled substance in the third degree. Following a jury trial, defendant was found guilty of two counts of criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the third degree and was subsequently sentenced, as a second felony offender, to an aggregate term of 10 years in prison, plus postrelease supervision. County Court thereafter denied his motion pursuant to CPL 440.10 and 440.20 to vacate his conviction, as well as his subsequent motion to renew based upon newly discovered evidence. Defendant now appeals from his judgment of conviction and, by permission, from the denial of both his CPL article 440 motion and motion to renew.

Defendant argues that he was denied the effective assistance of counsel, that the People committed *Rosario* and *Brady* violations, that he was denied the right to a public trial and that he was improperly sentenced as a second felony offender. We find that there are unanswered questions regarding whether the People failed to disclose *Rosario* material—specifically evidence regarding conversations between undercover officers who testified at trial and defendant during a prior drug transaction between defendant and the officers that was alleged to have occurred on July 27, 2005, two weeks before the sales that were the subject of the indictment—and that, until there has been such disclosure and defendant has had an opportunity to establish that these materials should have been made available to him at trial, we cannot pass on the merits of the issues raised in this appeal.

The facts are not complicated or in dispute. As the result of information received from a confidential informant, defendant became a target of a drug investigation being conducted by the Special Investigations Unit of the Ithaca Police Department, as well as the State Police Community Narcotics Enforcement Team. A police officer working in an undercover capacity was introduced to defendant by the informant on the afternoon of July 27, 2005 and, at that time, purchased from him a fentanyl transdermal patch and 11 pills containing oxycodone for $140. The officer also discussed making other buys from defendant and made arrangements by which she would contact him in the

future.[1] At the time, the undercover officer was wearing a transmitter that recorded her conversation with defendant and her activities were being monitored by other police officers surveilling the transaction. Two weeks later, the undercover officer again contacted defendant and, on August 10, 2005, while wearing a transmitter, purchased a quantity of cocaine from him. Nine days later, on August 19, 2005 the undercover officer again contacted defendant and, on this occasion, purchased from him cocaine, oxycodone and fentanyl. Of note, in their first contact on July 27, defendant told the undercover officer that he would next have a supply of fentanyl on the 19th of the month, or the date that this transaction took place. Shortly thereafter, a sealed indictment was returned charging defendant with the narcotics sales that occurred on August 10 and 19, but did not contain any charges against defendant as to the first sale that had occurred on July 27.

Prior to trial, defendant made a timely demand for, among other things, all *Rosario* material and, in that regard, was provided with statements and recordings made by the People's trial witnesses in connection with the drug transactions charged in the indictment. However, he was not provided with any material regarding the July 27, 2005 transaction, even though the undercover officer who made that buy and a police officer who surveilled that transaction testified at his trial. When defendant subsequently uncovered information regarding this sale and its relation to the charges contained in the indictment, he moved to set aside his conviction pursuant to CPL 440.10 on the ground, among other things, that *Rosario* material had not been provided to him as to some of the witnesses who testified at trial. The People take the position that, because this sale was not charged in the indictment and no evidence of this encounter was introduced at trial, they were—and continue to be—under no obligation to disclose any of this material. County Court, while appearing to accept this argument, denied defendant's motion to vacate his judgment of conviction on the ground that he had already been provided with the "duplicative equivalent" of these materials and any disclosure was not required.[2] The court arrived at this conclusion and rendered its decision on de-

---

**1.** All of this information was uncovered by defendant after trial through a Freedom of Information Law request that he had filed with the Ithaca Police Department.

**2.** In fact, all that had been provided by the People to defendant at trial regarding the July 27, 2005 transaction was a brief note in a police report that the undercover officer "had already purchased narcotics from [defendant] in the recent past." The affidavit referred to by the dissent describing this transaction in more detail was not provided until defendant had filed his request

fendant's motion without a hearing or without conducting a review of the materials in question.

In any criminal prosecution, the People are required to "make available to the defendant . . . [a]ny written or recorded statement . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony" (CPL 240.45 [1] [a]; *see People v Rosario*, 9 NY2d 286, 290-291 [1961], *cert denied* 368 US 866 [1961]; *People v Hall*, 268 AD2d 682, 683-684 [2000], *lvs denied* 94 NY2d 920 [2000], 95 NY2d 797 [2000]). The People argue, and the dissent apparently agrees, that any statements made by the undercover officer regarding the buy of July 27, 2005 and, in particular, the recording of her conversation with defendant, are not *Rosario* material because this illegal sale of narcotics was not charged in the indictment, nor was any testimony regarding this transaction introduced into evidence at trial.[3]

The obligation imposed by *Rosario* is not so limited or so strictly defined. In that regard, we refer to *People v Baghai-Kermani* (84 NY2d 525 [1994]) where, under strikingly similar circumstances, tape recordings compiled during a criminal investigation were deemed to constitute *Rosario* material and convictions were reversed due to the People's failure to disclose them when the witness who made them testified at trial (*id.* at 530-531). In that case, undercover police officers purchased prescriptions for controlled substances from the defendant at his medical office and testified to the details of each transaction at trial (*id.* at 528-529). After the defendant was convicted of 10 separate counts in regard to the illegal sale of these prescriptions, it was learned that one of the investigators had made tape recordings that bore on his relationship with the defendant and had not been disclosed at trial (*id.* at 529). One of the tape recordings was made when the investigator went to the defendant's office to buy a prescription, but was turned away without seeing the defendant because the office had run out of prescription forms (*id.* at 529-530). The investigator did not testify to this trip to the defendant's office, and nothing contained in the

under the Freedom of Information Law with the Ithaca Police Department and was not available to the defense at the time the undercover officer testified at trial.

3. Testimony that indirectly referred to this transaction was introduced by the People at trial. The undercover officer testified that the August 10, 2005 sale was arranged as the result of a phone call she made to defendant. Not only had the undercover officer obtained defendant's phone number during this first transaction, but she testified at trial that she recognized defendant's voice as the result of a "prior situation." The only prior contact the undercover officer ever had with defendant occurred during the first buy on July 27, 2005.

indictment made reference to it (*id.* at 530). Despite these facts, the tape recording was deemed to be *Rosario* material and the convictions of the defendant based on this investigator's testimony were reversed because this tape recording—and another—had not been disclosed to the defendant at trial even though both "included statements by a trial witness about his criminal transactions with [the] defendant" (*id.*; *see People v Brome*, 278 AD2d 745, 747-748 [2000]; *People v Palma*, 224 AD2d 363, 365 [1996], *lv denied* 88 NY2d 883 [1996]).[4]

Here, the connection between the undisclosed tape recording and the issues raised at trial is even more compelling. For example, we now know that the July 27, 2005 sale was the first direct contact that any police officer had with defendant during this investigation and that, during this encounter, future sales of illegal drugs were discussed. It involved the same principals discussing the same illegal subject matter and occurred only a short time before the crimes charged in the indictment were committed. In addition, this transaction served to define the parameters of the undercover officer's future relationship with defendant and undoubtedly facilitated the sales of illegal drugs of which defendant now stands convicted. Given these facts—none of which are in dispute—the importance of this first transaction and its relevance to the entire investigation of defendant can hardly be overstated. For that reason, the tape recording and any other materials that document the undercover officer's conversation with defendant should be fully disclosed and a more thorough inquiry of their contents should be conducted before any decision is made as to whether it was reversible error not to turn them over to defendant when these witnesses testified at trial. To simply reply upon an affidavit of a police officer, who did not participate in this transaction and had no contact with defendant prior to his arrest, for the proposition that these materials had no relevance to this proceeding in the face of uncontroverted proof to the contrary does not accord this defendant with any fair measure of due process (*see People v Brome*, 278 AD2d at 748; *see generally People v Williams*, 50 AD3d 1177 [2008]).

It may not have been in defendant's interest, given the illegal activity involved, to have any of these materials disclosed at his trial, and it is questionable whether he will be able to establish that, if there had been timely disclosure of these materials, a

---

4. A second tape recording was made during an investigation of another doctor by this investigator and was found to be *Rosario* material because it contained statements by the investigator about the defendant and his medical office.

"reasonable possibility" exists that there would have been a different verdict (CPL 240.75; *see People v Jackson*, 78 NY2d 638, 649 [1991]; *People v Williams*, 50 AD3d at 1179; *People v Tucker*, 40 AD3d 1213, 1216 [2007], *lv denied* 9 NY3d 882 [2007]). However, no claim has been made that there are any public safety concerns that will be compromised by the disclosure of these materials,[5] and there is no legitimate reason not to allow defendant to review these materials and provide him with a meaningful opportunity to show that, if he had them at trial, there is reason to believe that there would have been a different result. For that reason, we remit the matter to County Court for a hearing—after the People have disclosed to the court and defendant all documents or recordings relating to the July 27, 2005 incident that were produced by, or contain statements made by, any police witness who testified at trial—for a determination whether the previously undisclosed material constituted *Rosario* material and, if it did and that material had been disclosed, there was a reasonable possibility of a different verdict.

Malone Jr. and McCarthy, JJ., concur.

Mercure, J.P. (dissenting). As the evidence of the uncharged July 2005 drug sale is not *Rosario* material and, regardless, could not have created a reasonable possibility of a different result at trial, we respectfully dissent.

Evidence constituting *Rosario* material is "[a]ny written or recorded statement . . . made by a person whom the prosecutor intends to call as a witness at trial, and *which relates to the subject matter of the witness's testimony*" (CPL 240.45 [1] [a] [emphasis added]; *see People v Rosario*, 9 NY2d 286, 289 [1961], *cert denied* 368 US 866 [1961]; *People v Feerick*, 241 AD2d 126, 136 [1998], *affd* 93 NY2d 433 [1999]). There is no dispute that the July 2005 sale was not mentioned at all during trial, and was only indirectly referenced by one witness, an undercover officer who stated that she knew defendant from an unspecified "prior situation."[*] Accordingly, by definition, the evidence relating to the July 2005 sale is not *Rosario* material.

Notwithstanding the plain language of CPL 240.45 and the

---

**5.** Our decision should not be read as requiring the disclosure of any document that would in some way endanger any person or the public and, in such a case, the People retain the right to seek a protective order prohibiting the disclosure of that material (*see* CPL 240.50 [1]).

* We note that the People only sought to introduce evidence of the prior drug sale if defendant presented an agency defense and elected to testify, and such evidence would generally be improper on their direct case (*see People v Ross*, 147 AD2d 954, 954 [1989], *lv denied* 73 NY2d 1021 [1989]).

case law requiring a connection between the prior statements of a prosecution witness and his or her direct testimony, the majority nevertheless claims that evidence related to the July 2005 sale could somehow constitute *Rosario* material. The cases relied upon by the majority in support of this proposition are hardly supportive of this claim. For example, the majority points to a case where the undisclosed prior statements included recordings of visits to a defendant's office that did not form the basis of any criminal charge against the defendant and were apparently not referenced in any witness's testimony (*People v Baghai-Kermani*, 84 NY2d 525, 529 [1994]). Any similarity between that case and the present one is superficial, however, as the undisclosed recordings in *Baghai-Kermani* contained references to a visit that was a subject of testimony and further contradicted a witness's testimony as to how many times he had visited the defendant (*id.* at 529-530, 530 n 1). Likewise, the other cases cited by the majority deal with situations where the undisclosed evidence related to a witness's testimony in some way (*People v Brome*, 278 AD2d 745, 747-748 [2000] [evidence showing erasure of surveillance recordings related to witnesses' testimony regarding that surveillance]; *People v Palma*, 224 AD2d 363, 364-365 [1996], *lv denied* 88 NY2d 883 [1996] [prior statements of witness summarizing crimes and investigation thereof related to testimony regarding investigation]). In contrast, no prosecution witness here testified about the July 2005 sale, and there is no connection between that sale and such testimony. As a result, any evidence relating to the July 2005 sale is not *Rosario* material (*see People v Hunter*, 16 AD3d 187, 188 [2005], *lv denied* 4 NY3d 887 [2005]; *People v Ross*, 147 AD2d 954, 954-955 [1989], *lv denied* 73 NY2d 1021 [1989]).

Another critical factor overlooked by the majority is that the cases they rely upon were handed down prior to the enactment of CPL 240.75, which jettisoned the rule requiring per se reversal for a *Rosario* violation in favor of one where reversal is necessary only if "there is a reasonable possibility that the nondisclosure materially contributed to the result of the trial or other proceeding" (CPL 240.75; *see People v Sorbello*, 285 AD2d 88, 90-93 [2001], *lv denied* 97 NY2d 658 [2001]; *People v Felix-Torres*, 281 AD2d 649, 650-651 [2001]). Defendant, not the People, bore the burden of showing that the violation created such a reasonable possibility (*see People v Sorbello*, 285 AD2d at 93; *People v Felix-Torres*, 281 AD2d at 651).

Defendant offered no credible suggestion as to how the absent evidence of the prior sale could have created such a "reasonable possibility." We have far more than a naked assurance that evi-

dence of the prior sale would not assist defendant; indeed, the July 2005 sale is well documented in the record by numerous documents obtained by defendant, including a police report and sworn statement of an investigator who testified at trial. Those documents reveal that evidence of the earlier sale would damage defendant's agency defense, the sole purpose for which the evidence was sought. In fact, the very existence of the prior sale would undermine that defense (see People v Lam Lek Chong, 45 NY2d 64, 75 [1978], cert denied 439 US 935 [1978]; People v Rodriguez, 193 AD2d 705, 706 [1993], lv denied 82 NY2d 725 [1993]; People v Rubens, 190 AD2d 969, 969 [1993]). Nor would an agency defense be furthered by revelations that defendant gave drugs to an investigator during the prior sale with the expectation of payment, told her when he would have drugs in the future and made arrangements with her for future transactions (see People v Roche, 45 NY2d 78, 85 [1978], cert denied 439 US 958 [1978]; People v Lam Lek Chong, 45 NY2d at 75; People v Jackson, 11 AD3d 928, 929 [2004], lv denied 3 NY3d 757 [2004]). Moreover, defendant admittedly made the sales in the hope of obtaining employment, a personal benefit arising from the sales that would serve to defeat an agency defense (see People v Brown, 52 AD3d 204, 205-206 [2008], lv denied 11 NY3d 786 [2008]).

For all the bluster regarding the undisclosed documents, neither the majority nor defendant—who, as a participant in the July 2005 sale, is in a good position to state what transpired during it that would have aided him at trial—provide anything beyond speculation as to how evidence of the prior sale could have assisted defendant's agency defense. Indeed, the majority confesses skepticism as to whether defendant would have been aided by revelations at trial regarding uncharged drug sales. Nevertheless, the majority remits this matter to County Court for proceedings which are, in our view, unnecessary. As County Court is not obliged to assist defendant in "an unrestrained 'tour of investigation seeking generally useful information' " that lies outside the bounds of the Rosario rule, we would reject defendant's Rosario argument and address his remaining claims of error (People v Poole, 48 NY2d 144, 148 [1979], quoting People v Rosario, 9 NY2d at 290).

Spain, J., concurs. Ordered that the decision is withheld, and matter remitted to the County Court of Tompkins County for further proceedings not inconsistent with this Court's decision.